# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-1497

_____

SHIRLEY BOWMAN,                       *
                                                *

        Plaintiff - Appellant,        *
                                                *

   vs.                             * Appeal from the United
                                                * States District Court

JO ANNE B. BARNHART,        * for the Eastern District
Commissioner, Social Security    * of Arkansas.
Administration,                *
                                                *

        Defendant - Appellee.      *

_____

Submitted:  September 13, 2002
Filed: November 20, 2002

_____

Before McMILLIAN, and MORRIS S. ARNOLD,  Circuit Judges, and BOGUE,[1]
District Judge.

_____

BOGUE, District Judge.

---

[1] The Honorable Andrew W. Bogue, United States Senior District Judge for the
District of South Dakota, sitting by designation.

Shirley Bowman appeals from a judgment of the district court[2] affirming a final decision of the Commissioner of the Social Security Administration denying social security disability benefits. We reverse and remand for further proceedings.

**BACKGROUND**

Bowman was born in 1945, has a GED, and last worked in 1995 as an office clerk. She alleges a disability onset date in June 1998. The medical evidence is as follows. In June 1997, Bowman was admitted to the hospital for back pain. Hospital notes indicate that she was being treated by Dr. Hermie Plunk. X-ray and bone scan examinations revealed compression fractures of her thoracic spine. Dr. Plunk's office notes from June 1997 to August 1999 have over 97 entries indicating treatment for systemic and discoid lupus, high blood pressure, hypothroidism, chronic back pain, anxiety, and depression. Although some of the entries are for office visits, other entries reflect telephone calls for prescription refills, especially for pain medications and muscle relaxants. An April 1999 spine scan showed thoracic and lumbar scoliosis and multiple compression fractures of the thoracic spine.

In November 1999, Bowman saw Dr. Edward Cooper, an orthopedic surgeon. Dr. Cooper noted that Bowman was "humped over" and had pain from kyphosis (curvature of the thoracic spine). X-ray and MRI examinations showed multiple compression fractures of the thoracic spine with a loss of body height, kyphosis, and low bone density (osteoporosis). Dr. Cooper noted that as long as Bowman had osteoporosis, she would continue to have micro-compression fractures and back pain. He explained that although Bowman had periods of relief from back pain, a minor trauma could cause the pain to reoccur, noting she had reported pain on sneezing. Dr. Cooper referred Bowman back to Dr. Plunk for treatment.

---

[2]The Honorable Henry Jones Jr., United States District Judge for the Eastern District of Arkansas.

In a December 1999 letter, Dr. Plunk stated that she had treated Bowman for thirty years and that Bowman had constant pain and limited mobility due to systemic and discoid lupus, osteoarthritis, and multiple compression fractures of the thoracic spine. In addition, the doctor noted that Bowman had general anxiety and situational depression. Dr. Plunk listed Bowman's current medications, which included Xanax, Plaquenil, Oxycontin, and Skelaxin, noting Bowman would continue to be monitored with blood tests, x-rays, and monthly physical evaluations.

In May 2000, Bowman testified before an administrative law judge (ALJ). Bowman stated she had been laid off from her job in 1995 and drew unemployment compensation. She acknowledged that in a previous application for disability insurance benefits, she alleged a disability onset at the time of lay-off, explaining at that time she believed she could not work because her lupus had worsened. She testified she could not return to her past work as an office clerk, asserting she could not sit for prolonged periods because of pain and stiffness in her back and swelling in her elbow, legs, and ankles. She claimed after sitting for an hour and a half, she had to lie down, usually with a heating pad. Although she noted she did not know how to explain her pain, Bowman stated if she did not "catch a sneeze" or coughed "hard" something "popped." Bowman stated she no longer drove or did housework, and spent much of her day lying down or watching television. Bowman stated that she was taking Paxil for her depression, but it was not as effective as another anti-depressant, which she had to stop because of side effects. She also stated she probably had side effects from other medications, but because she took so many, she could not identify them. Bowman's daughter corroborated her mother's testimony of severely restricted daily activities.

In response to the ALJ's hypothetical question, a vocational expert (VE) testified that if Bowman suffered from mild to moderate pain which was treated with medication, depression that was controlled with medication, and could sit for one to two hours without interruption, she could return to her past work. However, the VE

testified that if Bowman had chronic moderate to severe pain that effected her concentration, she would be unable to work.

The ALJ concluded that Bowman was not disabled because she could return to her former work as an office clerk, finding that her allegations of disabling pain were not credible. Among other things, the ALJ noted that Bowman had stopped working in 1995 because of a lay-off, not because of pain, and that the medical evidence showed no significant deterioration of her condition since 1995. In particular, the ALJ noted a 1998 entry in Dr. Plunk's office notes indicated Bowman's lupus was controlled with medication. The ALJ also believed the evidence showed that Bowman had a good response to conservative treatment of her spinal compression fractures, noting she had not had surgery. The ALJ found the testimony by her daughter unpersuasive since it was based on acceptance of Bowman's allegations of disabling pain. After the Appeals Council denied review, Bowman filed suit. The district court upheld the ALJ's decision.

## DISCUSSION

"We review de novo a district court decision upholding the denial of social security benefits." Lauer v. Apfel, 245 F.3d 700, 702 (8th Cir. 2001). "We will affirm the ALJ's findings if they are supported by substantial evidence on the record as a whole." Cox v. Apfel, 160 F.3d 1203, 1206 (8th Cir. 1998). "However, the review we undertake is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision[;] we also take into account whatever in the record fairly detracts from that decision." Id. We note that even if a claimant is represented by counsel, "[t]he ALJ has a duty to develop the facts fully and fairly." Id. at 1209.

On appeal, Bowman argues that the ALJ erred in discounting her allegations of disabling pain. We agree. In analyzing Bowman's allegations of disabling pain,

the ALJ was required to consider the medical evidence, her "prior work history; daily activities; duration, frequency and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

It is undisputed that Bowman has several impairments, such as systemic lupus, compression fractures of the spine, kyphosis, which alone or in combination, could cause chronic pain. As to the intensity of her pain, the ALJ found that the evidence showed that she had only mild to moderate pain. The medical evidence does not support the ALJ's finding. Among other things, in an attempt to alleviate Bowman's pain, Dr. Plunk prescribed Vicodin, Skelaxin, and Oxycontin. Vicodin is a narcotic prescribed "for the relief of moderate to moderately severe pain." Physicians' Desk Reference (PDR) 516 ( 5th ed. 2002). Skelaxin is a muscle relaxant prescribed for "acute, painful muscoskeletal conditions." Id. at 1304. Oxycontin is prescribed for "the management of moderate to severe pain when a continuous, around the clock analgesic is needed for an extended period of time." Id. at 2913.

Nor is there evidence that the medications alleviated her pain, swelling, and depression to the point where she could return to her previous job as an office clerk. In finding that Bowman's lupus was controlled by medication, the ALJ relied on a 1998 entry in Dr. Plunk's notes. However, that one notation is not substantial evidence that Bowman's systemic lupus was controlled at all times during her insured status. Systemic lupus is "a chronic, remitting, relapsing, inflammatory, and often febrile multisystemic disorder of connective tissue." Kelley v. Callahan, 133 F.3d 583, 585 n.1 (8th Cir. 1998) (internal quotation omitted). In other words, the symptoms of systemic lupus, such as pain and swelling, can flare-up, subside, and flare-up again. We also note that Bowman testified that her current anti-depressant was not as effective as a previous one, which she stopped taking because of side effects.

The ALJ's finding that Bowman's compression fractures responded well to conservative treatment is also unsupported. Although a 1997 hospital note indicated Bowman had some pain relief due to physical therapy and medication, that note does not undermine Bowman's testimony as to the pain caused by her compression fractures. The ALJ again failed to consider the nature of the impairment. Dr. Cooper explained that although Bowman may have periods of relief from her compression fractures, because of her osteoporosis, any minor trauma could cause more fractures resulting in more pain. Indeed, at the hearing, Bowman testified that she did not know quite how to explain the cause of her pain, but knew if she did not "catch a sneeze" or "coughed hard," something "popped" and she was in pain. Dr. Cooper also explained that Bowman's kyphosis was a progressive condition, causing her to be "humped over" and in pain.

Because the ALJ failed to consider the progressive nature of Bowman's spinal impairments and the relapsing, remitting nature of her systemic lupus and failed to consider the combined effect of her impairments, both mental and physical, the medical evidence does not show, as the ALJ found, that Bowman's condition had not significantly deteriorated since she was laid off of work in 1995.[3]

The ALJ also erred in discounting Bowman's allegations of disabling pain because she had been treated medically, not surgically, for her impairments. "No medical report suggests that [Bowman] has not been pursuing a valid course of

_____

[3]In this case, we do not believe that the fact that Bowman was laid off in 1995, "and did not quit because of her impairment[s] [is] an inconsistency so striking as to negate [her] subjective claims of pain" concerning her disability beginning in June 1998. Cox v. Apfel, 160 F.3d 1203, 1208 (8th Cir. 1998). We also note that Bowman explained that in a previous application she had alleged a disability onset date at the time of the lay-off because she did not believe she could continue to work because of swelling in her feet and legs. See id. (no inconsistency where onset of disability coincided with lay-off). Bowman also noted that her previous job accommodated her.

treatment." Tate v. Apfel, 167 F.3d 1191, 1197 (8th Cir. 1999). No doctor has recommended surgery for her conditions. To the contrary, Dr. Cooper, an orthopedic surgeon, referred Bowman back to Dr. Plunk for medical management of her spinal impairments.

Even assuming Bowman's pain, swelling, and depression were controlled by medication, the ALJ failed to develop the evidence as to the medications' side effects. Although the ALJ did not believe Bowman's testimony concerning her inability to perform ordinary daily activities and need to rest three or four hours a day, we note that the combination of Oxycontin and an anti-depressant can result in sedation, PDR at 2914, and Skelaxin can cause drowsiness and nervousness. Id. at 1301. Moreover, Oxycontin is a "controlled substance with abuse liability similar to morphine." Id. at 2912.

Although Dr. Plunk's medical notes have numerous entries indicating office visits or telephone calls for prescription refills, as the Commissioner notes, the entries are somewhat cursory, as is the doctor's 1999 letter listing Bowman's impairments and medications. In cases such as this, the ALJ was obligated to contact Dr. Plunk, who has treated Bowman for thirty years, for "additional evidence or clarification," 20 C.F.R. § 404.1512(e), and for an assessment of how the "impairments limited [Bowman's] ability to engage in work-related activities." Lauer, 245 F.3d at 706; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000) ("In spite of the numerous treatment notes . . . not one of [claimant's] doctors was asked to comment on his ability to function in the workplace."). Instead of developing the record from Dr. Plunk, in assessing Bowman's residual functional capacity, the ALJ improperly relied on the report of a state consultant, who did not examine Bowman. See id. We remind the ALJ that "opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." Id. We also remind the ALJ that "the testimony of a vocational expert who responds to a hypothetical based

7

on such evidence is not substantial evidence upon which to base a denial of benefits."
Id.

Accordingly, we reverse the judgment of the district with instructions to remand to the Commissioner for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT