# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1544

_____

| | | |
|---|---|---|
| Angeline Curran-Kicksey, | * | |
| also known as Angeline Curran, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Jo Anne B. Barnhart, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 9, 2002

Filed: January 10, 2003

_____

Before HANSEN, Chief Judge, HEANEY, and MORRIS SHEPPARD ARNOLD,
     Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Angeline Curran-Kicksey applied for disability insurance benefits and supplemental security income based on a back injury that she allegedly suffered in a 1994 automobile accident. The Social Security Administration (SSA) denied her application initially and on reconsideration. After a hearing, an administrative law judge ruled that Ms. Curran-Kicksey was not disabled. Ms. Curran-Kicksey appealed to the district court, which remanded the case to the ALJ with instructions for an

additional hearing. Following the second hearing, the ALJ discounted Ms. Curran-Kicksey's subjective complaints of pain and ruled that she was not disabled within the meaning of the Social Security Act because she retained the residual functional capacity to perform work in the national economy. The Appeals Council denied her request for review. When Ms. Curran-Kicksey appealed to the district court[1] it upheld the administrative decision.

Ms. Curran-Kicksey now appeals to this court, arguing that her case should be remanded to the ALJ for consideration under a recently revised listing of impairments. She also argues that the ALJ improperly discounted her subjective complaints of pain in determining whether she could perform work in the national economy.

When considering whether the ALJ properly denied social security benefits, we review matters of law *de novo* and determine whether the ALJ's findings of fact are supported by substantial evidence in the record as a whole. *See Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). Because we find that the ALJ committed no legal error and that its findings were supported by substantial evidence, we affirm.

I.

After the second evidentiary hearing, an ALJ evaluated Ms. Curran-Kicksey's claim according to the familiar five-step analysis prescribed by SSA regulations. 20 C.F.R. § 404.1520; *see, e.g., Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). The ALJ resolved the first and second steps in Ms. Curran-Kicksey's favor by finding that she had not engaged in substantial gainful activity and that she had a medically severe combination of impairments. The dispute between the parties began at the third step. *See* 20 C.F.R. § 404.1520(d). Before the ALJ (and the district court)

---

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

Ms. Curran-Kicksey argued that she met Listing § 1.05C concerning "[d]isorders of the spine." *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.05C (2001).[2] The ALJ found, however, and the district court agreed, that Ms. Curran-Kicksey did not meet all of the requirements of § 1.05C and thus was not conclusively presumed to be disabled under that section. The ALJ concluded that there was no medical evidence in the record that Ms. Curran-Kicksey suffered muscle spasm, reflex loss, or sensory loss, all of which were required under § 1.05C.

Having lost before the ALJ and the district court on the issue of whether she met the requirements of § 1.05C, Ms. Curran-Kicksey has now shifted direction somewhat and argues that § 1.05C is inapplicable to her situation: She urges us instead to apply new musculoskeletal listings that went into effect on February 19, 2002, more than two years after the SSA's final disposition of her case. As part of the updated musculoskeletal listings, § 1.05C was replaced by a new listing applicable to disorders of the spine, § 1.04. *See* 66 Fed. Regis. 58,010, 58,017-18 (Nov. 19, 2001); 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04 (2002). This new listing relaxes some of the requirements of § 1.05C, making it easier for a person to show disability resulting from a spine disorder. Ms. Curran-Kicksey urges us to remand to the ALJ for consideration of whether she meets the requirements of § 1.04.

We feel obligated to reject this latest request by Ms. Curran-Kicksey. Even if she would have met the requirements of § 1.04, a question we need not decide here, it would be improper to apply § 1.04 retroactively to her claim. In publishing the new listings, the SSA stated that "[w]ith respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance

---

[2]We note that Listing § 1.05, as currently numbered, pertains to amputations and is not at issue here. *See* C.F.R. Part 404, Subpt. P, App. 1, § 1.05 (2002). All references to Listing § 1.05C in the text of this opinion are to the previous version of § 1.05, which addressed spine disorders.

with the [listings] in effect at the time of the final decision." 66 Fed. Reg. 58,010, 58,011. The SSA further stated, "We will continue to apply the current [listings] until [February 19, 2002]. When the [new listings] become effective, we will apply them to new applications filed on or after [February 19, 2002]." *Id.*

Despite these rather explicit pronouncements authorizing only a prospective application of the new listings, Ms. Curran-Kicksey argues that remand is dictated by the line of cases that require us to "apply the law in effect at the time [we] render[] [our] decision." *Seniors United for Action v. Ray*, 675 F.2d 186, 189 (8th Cir. 1982). While we agree with this general legal principle, Ms. Curran-Kicksey is mistaken in suggesting that it dictates the application of the new listings. The SSA clearly and unambiguously explained when the new listings were issued that they apply to only those cases that have not resulted in a final administrative decision by February 19, 2002. That is the law in effect at this time, and its application requires us to reject Ms. Curran-Kicksey's request.

For Ms. Curran-Kicksey to have been conclusively presumed disabled, she must have met the requirements of § 1.05C. The ALJ and the district court found that Ms. Curran-Kicksey did not meet those requirements, and Ms. Curran-Kicksey does not dispute this finding or point to any medical evidence that she suffered muscle spasm, reflex loss, or sensory loss as § 1.05C requires. We therefore conclude that Ms. Curran-Kicksey does not have a listed impairment.

## II.

Since Ms. Curran-Kicksey does not have an impairment that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, where the question is whether her impairment prevents her from performing work that she has performed in the past. *See* 20 C.F.R. § 404.1520(e). On the strength of a vocational expert's testimony, the ALJ "gave [Ms. Curran-Kicksey] the benefit of the doubt" and "assumed that [she could not] perform her past relevant work." The ALJ then turned

to the fifth and final step of the process to determine whether Ms. Curran-Kicksey had the functional capacity to perform other work in the national economy. *See* 20 C.F.R. § 404.1520(f). In making this determination, the ALJ heard testimony from a vocational expert who was asked two questions.

In the first instance, the ALJ instructed the vocational expert to assume that a person could lift no more than ten pounds occasionally and five pounds frequently; could stand, walk, and sit without a problem, for one to two hours at a time; could no more than occasionally stoop or climb; could do no kneeling or crawling; and could not work in cold and damp environmental conditions. These instructions reflect Ms. Curran-Kicksey's condition that the medical records documented and Ms. Curran-Kicksey's subjective complaints to the extent that the ALJ considered her complaints credible. Some of Ms. Curran-Kicksey's subjective complaints were omitted from this hypothetical, however, as the ALJ deemed them to be inconsistent with the evidence as a whole. The vocational expert testified that the person who the ALJ hypothesized could perform work in the national economy as a statistical clerk, night desk clerk, checker, sorter, or collection records clerk.

In the second instance, the ALJ instructed the vocational expert to consider those subjective complaints of Ms. Curran-Kicksey's that the ALJ had discredited and omitted in the first instance. Of these omissions, the most significant concerned Ms. Curran-Kicksey's testimony that she needed to lie down and rest frequently throughout the day. The vocational expert testified that such a person would not be able to perform work in the national economy.

Ms. Curran-Kicksey's complaint, simply stated, is that the ALJ erred by discrediting her subjective testimony concerning her functional capacity for working in the national economy. As we have already said, we review the ALJ's decision to determine whether the Commissioner's factual findings are supported by substantial evidence on the record as a whole. *See Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir.

2000). In determining whether substantial evidence exists for the ALJ's decision, we consider "evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996).

In evaluating a claimant's subjective allegations of pain and disability, we follow the principles outlined in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ may not discount subjective complaints of pain solely because they are not fully supported by the objective medical evidence, but such complaints may be discounted based on inconsistencies in the record as a whole. *Id*. The lack of supporting objective medical evidence may be used as "one factor to be considered in evaluating the credibility of the testimony and complaints." *Id*. In addition to the medical evidence, the ALJ is required to assess a claimant's subjective complaints in light of her prior work record and in light of observations by third parties and physicians relating to the claimant's daily activities, to the duration, frequency, and intensity of pain, to any precipitating or aggravating factors, to the dosage, effectiveness, and side effects of any medication, and to any functional restrictions. *Id*.

Ms. Curran-Kicksey maintains that the ALJ failed to analyze the evidence in light of these considerations, and instead discounted her subjective complaints only because they were not completely substantiated by the medical evidence. Having reviewed the ALJ's opinion, however, it is clear to us that she thoroughly analyzed the evidence in light of the *Polaski* considerations.

-6-

It is important to note first that the medical evidence does not fully substantiate Ms. Curran-Kicksey's subjective complaints. An orthopedic surgeon examined Ms. Curran-Kicksey immediately after her automobile accident and found that she had degenerative changes in her neck; but it was his opinion that these injuries existed long before the accident, when Ms. Curran-Kicksey was working full-time without difficulty. Later, when Ms. Curran-Kicksey asked the same doctor for a "clear statement" that she was unable to work, the doctor felt that such a statement would be inappropriate. Instead, he expressed the opinion that she could "work as tolerated." Although Ms. Curran-Kicksey sought further treatment from several physicians for various symptoms that she was experiencing, she was at no time told that she could not work. Instead, she was repeatedly encouraged to work and exercise to an extent she found tolerable. Although it is difficult to discern from the medical record the precise extent of Ms. Curran-Kicksey's impairments, the medical evidence falls far short of fully substantiating her subjective complaints.

As part of the medical evidence, the ALJ considered Ms. Curran-Kicksey's use of prescription medication. Ms. Curran-Kicksey testified in November 1996 that she had not taken prescription pain medication since the previous June, and she testified in July 1999 that she used pain medication as needed. In addition, there was evidence that Ms. Curran-Kicksey declined an opportunity to participate in physical therapy treatment. We believe that evidence that Ms. Curran-Kicksey did not regularly require prescription medication or physical therapy could create doubt in a reasonable adjudicator's mind with regard to her testimony about the extent of her pain. *Cf. Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998).

The ALJ also considered Ms. Curran-Kicksey's daily activities. The ALJ first noted that Ms. Curran-Kicksey had experienced real limitations in her ability to perform the regular activities of daily living. But even with these limitations, Ms. Curran-Kicksey admitted that she was able to perform a variety of activities. For

example, she maintained a steady exercise program, performed light housework, worked on a part-time basis, and volunteered for the "St. Patrick's Society." Although participation in these activities does not dispositively show that Ms. Curran-Kicksey's complaints of pain were exaggerated, they certainly were appropriate matters for the ALJ to consider under *Polaski*.

The ALJ found more inconsistencies in Ms. Curran-Kicksey's communications, or lack thereof, with her doctors. Ms. Curran-Kicksey testified before the ALJ that her need to lie down and rest throughout the day prevented her from working full-time. She did not, however, make this complaint to any of her doctors, nor did her doctors recommend such a course of action to her. In fact, as a response to Ms. Curran-Kicksey's complaints of disturbed sleep, her doctors actually instructed her to avoid taking naps and to exercise more often. The ALJ reasonably found that this raised doubts about the credibility of her testimony. Ms. Curran-Kicksey's credibility concerning her level of pain and discomfort was also undermined by a statement from one of her treating doctors that she "histrionically moans and jumps and grimaces" during examinations.

The ALJ also considered Ms. Curran-Kicksey's work record in evaluating her subjective complaints. The ALJ acknowledged that her strong work history tended to "show a strong financial motivation to work which would indicate support for the claimant's allegations of disability." This support, in the ALJ's opinion, was however offset to some degree by Ms. Curran-Kicksey's receipt of long-term private disability payments ($1400 per month), which the ALJ thought might have lessened her motivation to reenter the workforce. We think that the ALJ may have overstated the significance of the private disability payments, since Ms. Curran-Kicksey's private disability benefits would be offset by any disability payments made by the SSA. The ALJ also expressed concern that Ms. Curran-Kicksey's pending legal action stemming from the 1994 automobile accident might have increased her incentive to embellish

her pain, since a finding of "total disability" might bolster her private claim. Although we have previously recognized that pending lawsuits may indicate that there is an "element of secondary gain" in the claimant's disability claim, *see Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996); *cf. Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (per curiam), Ms. Curran-Kicksey's pending lawsuit had been settled by the time the second hearing occurred. Thus, we do not think that Ms. Curran-Kicksey's strong work history is significantly offset by her receipt of private disability benefits or the settlement of her lawsuit. This does not mean, however, that the ALJ erred in discounting her subjective complaints. As *Polaski* makes clear, work history is only one factor among many to be considered.

In sum, we believe that there is substantial evidence in record as a whole that supports the ALJ's decision to discount Ms. Curran-Kicksey's subjective complaints of pain.

## III.

For the reasons stated, we affirm the decision of the district court.

HEANEY, Circuit Judge, dissenting.

Although I agree with the majority's analysis in part I, I respectfully dissent, because Ms. Curran-Kicksey's claim should not have been denied.

The ALJ determined in her September 10, 1999 decision that the opinions of Dr. Lynn Demarco and Dr. William Baird should be given more weight than Dr. George Lawry's, because they were "in keeping with the evidence as a whole." The ALJ subsequently found the claimant's condition did not meet or equal listing 1.05C,

and denied her relief on that basis. The ALJ made this determination after acknowledging that Drs. Demarco and Baird had not actually examined Ms. Curran-Kicksey, but had only reviewed the record. Conversely, although Dr. Lawry personally examined and treated Ms. Curran-Kicksey, and stated an opinion as to her ability to work, the ALJ discounted Dr. Lawry's opinion because she believed it did not reflect the medical evidence in the record. There is no analysis offered to support this conclusion.

This court has held that when adjudicating a grant or denial of social security disability benefits, full consideration must be given to "all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties *and treating and examining physicians*." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (emphasis added). Further, "opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." Bowman v. Barnhart, 310 F.3d 1080, 1085 (8th Cir. 2002) (quoting Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)). The ALJ in this case appears to rely "on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion" of their own. Nevland, 204 F.3d at 858. What is particularly bizarre is that the ALJ determined that Dr. Lawry's opinion was not in keeping with the record as a whole, despite the fact that Dr. Lawry's examination and expressed opinions were *part* of the medical record. If anything, the opinions of Drs. Demarco and Baird were not "in keeping" with the record, and therefore do not constitute reasonable grounds for denying Ms. Curran-Kicksey's application. We are obligated to follow the established principle that examining physicians' opinions should be given greater deference than the opinions of physicians who simply review other physicians' records. See Bowman, 310 F.3d at 1085; Nevland, 204 F.3d at 858; Polaski, 739 F.2d at 1322.

Polaski requires an adjudicator to consider all the evidence relating to the claimant's condition. Relevant factors include: the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. Polaksi, 739 F.2d at 1322. In reviewing the ALJ's decision, it appears that she gave Polaski mere lip service.

First, the ALJ concluded that Ms. Curran-Kicksey was not limited in her daily activities: "[t]hough the claimant certainly experiences limitations in her abilities to perform activities of daily living, the claimant does admit that she can cook, likes to read, still visits with friends, and still drives her car at least locally in the Quad Cities area." As an initial matter, I note the accusatory tone the ALJ takes in suggesting that Ms. Curran-Kicksey "admitted" she can cook, likes to read, and still visits friends and drives her car. This is not a criminal proceeding, and Ms.Curran-Kicksey is not a defendant. More importantly, however, this court repeatedly held that the activities to which the ALJ points do not support a finding that the claimant is able to do sedentary work in an competitive economy on a day-to-day basis. See Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989) ("The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity."); McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc) (holding that the ability to do sedentary work "is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world").

Next, as the majority notes, the ALJ found that:

[Ms. Curran-Kicksey] testified before the ALJ that her need to lie down and rest throughout the day prevented her from working full-time. She did not, however, make this complaint to her doctors, nor did her doctors

-11-

recommend such a course of action to her. In fact, as a response to Ms. Curran-Kicksey's complaints of disturbed sleep, her doctors actually instructed her to avoid taking naps and to exercise more often.

Supra, at 8. I do not think the record supports this conclusion. On June 26, 1995, Dr. David Staub noted that Ms. Curran-Kicksey reported "ongoing fatigue." This language would indicate Ms. Curran-Kicksey's need to rest during the day, and that she told her doctors about her fatigue. It is patently unreasonable to require Ms. Curran-Kicksey to explicitly say "I cannot work during the day without rest" in order to find her testimony credible. Again, the ALJ appears unreasonably biased against Ms. Curran-Kicksey.

The ALJ next found that Ms. Curran-Kicksey declined a course of physical therapy that was offered to her. While it is true that Dr. Staub "offered to get her involved in a course of physical therapy to include iontophoresis and phonophoresis," and that Ms. Curran-Kicksey "did not want to pursue this," Dr. Staub also reported that Ms. Curran-Kicksey "has been forcing herself to walk for two miles" up to four times each week. The ALJ clearly ignored the fact that Ms. Curran-Kicksey had participated in extensive physical therapy over a period of years in an unsuccessful effort to advance her physical condition to the point where she could return to work on a full-time basis.[3]

_____

[3]See Administrative Record, at 152 (Dr. Timothy Millea, notes, October 17, 1994) ("She is continuing with occasional chiropractic as well as physical therapy."); 154 (Dr. Timothy Millea, notes, Dec. 5, 1994) ( "At the current time she is involved in physical therapy in the morning. . . ."); 155 (Dr. Timothy Millea, notes, Jan. 4, 1995) ( "She is continuing with chiropractic care once a week as well as physical therapy three times a week. However she states that her symptoms are not improving and that she has had worsening of her symptoms over the past few weeks."); 158 (Dr. Timothy Millea, notes, March 27, 1995) ("She is going to the Y on a regular basis for aquatic therapy and feels that she is tolerating this particularly in view of improved

The ALJ made other significant mistakes. The majority correctly notes that the ALJ "may have overstated the significance of the private disability payments, since Ms. Curran-Kicksey's private disability benefits would be offset by any disability payments by the SSA." Supra, at 8. There was no evidence to support the ALJ's position regarding the private disability payments or the pending lawsuit. It was simply rank speculation on the part of the ALJ which comes close to showing bias on her part. Unfortunately, the majority does not extend its analysis to a whole-scale inquiry of why such obvious mistakes were overlooked by the ALJ. I do not think a decision that is rife with factual errors warrants a finding that the ALJ's determination is supported by substantial evidence.

---

aerobic conditioning. She also works with physical therapy at NovaCare on a two times per week basis including ultra sound, IFC and whirlpool therapy."); 165 (Dr. Timothy Miller, notes, March 8, 1995) ("She is currently doing at least one hour of exercise per day."); 167 (Dr. Timothy Miller, notes, May 17, 1995) ("She has been staying very active continuing with her home exercise as well as working at the Y with swimming exercises and walking a mile and a half a day."); 171 (Dr. David Staub, notes, June 26, 1995) ("She is trying to exercise regularly despite this as she recognizes the importance of regular exercise. . . ."); 189 (Letter from Dr. Arthur Searle to Brad Church, Nov. 30, 1995) ("The client was walking up to two miles at a time until two months ago. In the past two months she hasn't been able to tolerate any exercise except in a swimming pool."); 406 (Dr. David Staub, notes, Feb. 13, 1997) ("She is currently doing hydrotherapy at Truman.").

For the foregoing reasons, I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.