**Larry C. NANCE, Sr., Substitute Party for Rosemary Nance, Deceased Plaintiff**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration Defendant**

**No. 5:03CV00359GH.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Aug. 17, 2004.

Alan J. Nussbaum, Esq., Nussbaum, Hendrix, Trussell & Crockrill, Little Rock, AR, for Plaintiff.

Greg White, Esq., Asst. U.S. Attorney, U.S. Attorney's Office, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

HOWARD, District Judge.

Pending before the Court are the proposed findings and recommended disposition of the Magistrate Judge regarding the final decision of the Social Security Administration denying the claim of Rosemary Nance, the late wife of Larry C. Nance, Sr., for disability insurance benefits.

■ After carefully reviewing the record, the Court is unable to accept the proposed findings and recommended disposition of the Magistrate Judge which affirms the denial of benefits to the late Rosemary Nance. The Court is of the view that the decision of the Administrative Law Judge (ALJ) is not supported by substantial evidence and that the case should be remanded for a proper and objective reconsideration of the evidence.

The late Rosemary Nance testified, during the hearing held by the ALJ, that she was 44 years of age; that she was a high school graduate and had worked for K–Mart for 20 years as a service clerk, operated a fork life, did heavy lifting as well as working in the clothing department, the electronic department and the receiving department when she resigned on March 8, 2000, because of seizures in her hand, hip and back problems and "trouble with speaking."

In response to a question posed by the ALJ, Mrs. Nance, testified as follows:

A. I was having problems with my joints, my legs swells and I've got to like put them up. They call it pitting edema, I have trouble with my back. Sometime I can't, I can't hardly walk. I have trouble with my nerves. I had this twitch, this thing in my hand. It just comes and goes and I can't sit long and I can't stand long. I told myself if I get a sit down job it would be perfect, but I am still having problems with my hands, my back and my legs. (Tr. 29)

She further testified that she made an attempt around June, 2001, to return to work at Sears Roebuck and due to the physical problems that she was still experiencing, she left Sears approximately two months after commencing work and applied for "a sit down job" at the University of Arkansas at Pine Bluff which she commenced on or about September 17, 2002, as a switchboard operator.

In response to the question "Do you have any problems sitting, ma'am" posed by the ALJ, Mrs. Nance testified:

A. I can sit, but if I— all right. I sit for a hour. Then I get up and try to stretch my legs. I have a hard time walking. I have a hard time standing. Then I get real dizzy. I don't know what— I get just dizzy. Then I stand for a while to get over that. Then I try to continue on. (Tr. 30) [1]

Mrs. Nance received medical treatment at the Pine Bluff Family Medical Center. Dr. Tearani Williams who is associated with the Medical Center, noted in a medical record on November 8, 2000, that Mrs. Nance had edema on foot and legs with swelling and realized difficulty in standing; and a liver profile with an elevated SGOT and SGPT. (Tr. 97–99)

---

1. In the Social Security Disability Supplemental Interview Outline, filed December 28,- 2000, Mrs. Nance stated that since her disability she was unable to dress and perform hair care without assistance; that she cannot change sheets, sweep, take out trash, do grocery shopping or perform banking duties; that she uses a cane and do not visit relatives or friends.

Larry Nance, Sr., husband of the late Mrs. Nance, offered testimony in support of his wife's testimony regarding her physical disabilities and pursuant to questions posed by the ALJ, Mr. Nance testified as follows:

Q. Did she leave out anything you think would be important to me?

A. I would say on the walking part, she's not able to walk 15 minutes because I have to walk daily because of my health and I try to get her to walk with me and she can't even make one lap around the track which takes about five minutes. She have to stop and rest.

Q. And you are disabled, are you, sir?

A. That's correct.

Q. Are you drawing Social Security disability?

A. Yes sir. (Tr. 34)

The ALJ called David Elmore, vocational expert (VE), and posed the following hypothetical question:

Q. Hypothetically if we have a female, I'm going a little bit back in time, let's say 43 years of age, 43, 44, twelve grades of education and past work experience as indicated by the record; if that individual exertional could handle weights at the light level, which would be up to 20 pounds occasionally, ten pounds or less frequently. Could sit a total of six hours out of a normal eight hour day, up to one hour at a time, could stand a total of four hours out of an eight hour day, up to 20 minutes at a time. Could walk up to two hours out of an eight hour day could that individual perform the Claimant's past work?

A. Just the switchboard receptionist position would meet that one.

Q. Are you talking about the job she is currently doing?

A. Yes, sir.

Q. Well, she hadn't done that over two years so I'm not going to consider it as

relevant work at this time. So your answer would be no?

A. No, sir, if we don't have that one.

Q. Okay. Are there any other jobs in this region of the United States or several regions of the United States this individual could perform?

A. Yes, sir, we have a sedentary semi-skilled example meeting this hypothetical, that of receptionist. Regionally we have just over 28,000 and nationally approximately one million. (Tr. 34–35)

Cynthia McCullough, Mrs. Nance's attorney, questioned the VE:

Q. Mr. Elmore, with the way her swelling is in her legs and her hands do you think that she's going to be able to do those jobs that you mentioned, with her condition getting worse?

A. To answer that I would need a limitation. In other words, would the swelling result in a decreased ability to reach, handle, finger, or feel, or sit or stand. Is there some sort of functional limitation that you can translate that into?

Q. Yes. On the functional level of her hands she doesn't have -

CLMT: I don't have feelings.

BY ATTORNEY:

Q. feelings in these fingers now and she's still trying to maintain the job and with her legs, when she stand, they're swelling very severely right now.

A. Um-hum.

Q. And it's getting worse and she's wanting to stop working to seek disability, but she's trying because she needs the income.

A. Well, that -

Q. Her hands are -

A. Does that translate into an inability to handle objects?

Q. Inability to grasp or hold.

A. Grasp and so forth.

Q. Hold, yes, sir.

A. Also some limitation on standing?

Q. A lot of limitation on the standing if you would like to see. There is -

A. Well, the first hypothetical said four hours out of an eight hour day or what would you estimate for this hypothetical?

Q. I would estimate with her hands the way they are, as far as grasping and holding, her condition is going to get worse as I see it now.

CLMT: Yeah.

BY ATTORNEY:

Q. So it's—

A. If we've got -

Q. got to be limited, very limited.

A. Okay. Is this a new hypothetical or you're asking me to add this to the first one.

Q. I'm just asking you to take into consideration of the limitation.

A. If we add the reach, handle, finger, feel to the first hypothetical they could not do that job I mentioned earlier.

Q. Okay. Well I would like for you to add that as one of the things, and this is the proof. She—

A. Well, they could not do the job that I had indicated in the first hypothetical. (Tr. 36–37).

Mrs. Nance died on May 17, 2003. The Certificate of Death designated the immediate cause as "Suspected Myocardial Infaction." The certificate further observes that the approximate interval between onset and death: "Undet."

In minimizing Mrs. Nance's credibility regarding her alleged disabling nature of the symptoms alleged, the ALJ made the following observations and concluded "she is not disabled within the meaning of the Social Security Act":

Also significant is the lack of more frequent or substantive medical treatment. The medical record reflects that the claimant has sought very minimal treatment. She mainly sought treatment from a chiropractor. She was seen on only two occasions in October 2000 and November 2000 by her primary treating physician. She has not been seen by any other treating or examining physician, other than her chiropractor since November 2000 (for more than 2 years). She has not been referred to a specialist or for pain management by either of her physicians for her allegations of disabling pain. In addition, the record shows that she is only on fluid pills, and takes only over-the-counter Tylenol for her allegations of disabling pain. Surely, if she was in as much discomfort and distress as she is now alleging, she would have sought additional and more substantive medical treatment.

The uncontradicted evidence offered by Mrs. Nance reflects that before she resigned as an employee of K–Mart due to the physical problems she was having, she was a diligent and highly trusted worker for twenty years; and that her employment duties encompassed a variety of tasks and activities, including light as well as heavy duty assignments. The inference is that she possessed a reputation as a loyal, dedicated and hard worker. She testified that "I tried working for Sears. Sears wanted me to come over there because I had experience at K–Mart. So I went. . . . I came to find out I couldn't do it at Sears. I was still having the same problems". These circumstances rebut any belief that Mrs. Nance was endeavoring to manipulate the system in order to get disability benefits. The inference flowing from these circumstances also demonstrate that due to the family's financial needs and her husband's disability, she was motivated to engage in work activities despite her physical limitations in order to deal with the family's financial needs. In addition, there is an inference that Mrs. Nance's determination to work regardless

of her physical problems resulted in her death on May 17, 2003.[2]

The ALJ's finding that Mrs. Nance's failure to seek more medical treatment is inconsistence with her complaint of disability symptoms fails to take into consideration that Mrs. Nance's husband was disabled and was receiving disability income; that the family was faced with financial problems; and that Mrs. Nance did not have the necessary funds to obtain the medical care or medication she needed to deal with her physical problems.

 An ALJ has a duty to develop a full and fair record and consider claimant's prior work history in analyzing claimant's subjective allegations concerning the intensity and persistence of pain or other symptoms and these subjective claims may not be disregarded solely because they are not substantiated solely by objective medical evidence. See: *Bowman v. Barnhart*, 310 F.3d 1080 (8th Cir.2002). See also: SSR 96–7p.

Finally, the ALJ concluded that the Commissioner had met the burden of establishing that there are a significant number of alternative jobs existing in the national, regional and local economy that Mrs. Nance could perform by making the following finding:

    .... This burden has been met by the testimony of the vocational expert who has identified numerous jobs consistent with claimant's abilities and limitations. Consequently, it is my decision that she is not disabled within the meaning of the Social Security Act.

As argued by counsel for plaintiff, the ALJ's hypothetical question posed to the VE was not properly formed and did not encompass numerous physical problems that Mrs. Nance allegedly suffered. Significantly, Mrs. Nance's attorney, during the hearing conducted by the ALJ, in posing hypothetical questions to the VE included, for example, Mrs. Nance's inability to grasp or hold, swelling in her legs and limitation in standing and the VE concluded that Mrs, Nance "could not do that job that I had indicated in the first hypothetical". (Tr. 36–37)

Given the totality of the circumstances discussed by the Court, the Court is not persuaded that the ALJ's decision is supported by substantial evidence.

Accordingly, the ruling of the Commissioner is reversed and the matter is remanded for a proper reconsideration of this matter. This is a "Sentence Four" remand within the meaning of 42 USC § 405.g.

---

2. The evidence reflects that she suffered from high blood pressure and shortness of breath. As indicated earlier, the death certificate designated the cause of her death as "Suspected Myocardial Infaction". Myocardial relates to one's heart muscle. See: PDR, Medical Dictionary, Second Edition, regarding the terms "infaction—sudden insufficiency of arterial of venus blood supply due to emboli, thrombi, mechanical factors, or pressure that produces a macroscopic area necrosses; any organ can be affected" and "myocardial—the middle layer of the heart consisting of cardial muscles."