# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3434

_____

Kathleen Coleman,                   *

                         *

          Appellant,         *

                         *   Appeal from the United States

    v.                      *   District Court for the Northern

                         *   District of Iowa.

Michael J. Astrue,            *

                         *

          Appellee.          *

_____

Submitted: April 13, 2007
Filed: August 16, 2007

_____

Before LOKEN, Chief Judge, BYE and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

Kathleen Coleman appeals the district court's judgment affirming the denial of her application for disability insurance benefits under the Social Security Act. The district court concluded the denial of benefits by the Commissioner of the Social Security Administration (SSA) was supported by substantial evidence on the record as a whole. Finding the SSA's development of the record inadequate, we reverse and remand for further proceedings.

I

In her application for disability benefits, Coleman alleged she was disabled due to a back injury, degenerative disc disease, leg pain, and a latex allergy. The SSA denied her application and Coleman sought review by an administrative law judge (ALJ). After holding a hearing in September 2004, the ALJ determined Coleman retained the ability to perform sedentary work as long as that work provided no exposure to extreme temperature changes or toxic fumes, and no stooping, kneeling, crawling, or squatting. The ALJ also found Coleman had a limited ability to deal with the public, maintain attention, and concentrate due to moderately severe pain. Given these restrictions, the ALJ determined Coleman could not perform her past work but could perform a significant number of jobs which exist in Iowa such as a document preparer or a table worker, making her ineligible for disability benefits. Review of the ALJ decision was denied by the SSA's Appeals Council, making it the final decision of the Commissioner. Although describing the disability determination as a "very close call," App. 21, the district court affirmed the Commissioner's final decision. On appeal, Coleman contends the district court committed reversible error because the Commissioner (1) gave improper weight to medical opinions in the record, (2) failed to include her severe latex allergy and need to frequently alternate between a standing and seated position in determining her residual functional capacity (RFC), and (3) improperly discounted her subjective complaints of nearly constant severe pain and sensitivity to latex exposure.

II

We review de novo the district court's decision upholding the Commissioner's denial of disability benefits. Bowman v. Barnhart, 310 F.3d 1080, 1083 (8th Cir. 2002). Our review is limited to a determination of whether the decision of the ALJ is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to

support the conclusion." Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). But "[t]he substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987). "'Substantial evidence on the record as a whole' . . . requires a more scrutinizing analysis." Id. (quoting Smith v. Heckler, 735 F.2d 312, 315 (8th Cir. 1984)). In reviewing the administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951), quoted in Gavin, 811 F.2d at 1199.

In general, the claimant bears the burden of proving his or her entitlement to disability insurance benefits under the Social Security Act. 20 C.F.R. § 404.1512(a); Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991). But if the Commissioner finds the claimant cannot return to her past relevant work, the burden of production shifts to the Commissioner, who must show the claimant retains the ability to perform other kinds of jobs which exist in substantial numbers in the national economy. See Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004); Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). The evidence must show the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc), abrogated on other grounds, 524 U.S. 266 (1998).

A

Coleman first contends the ALJ improperly weighted the medical opinions of Dr. John Piper, Dr. John Birkett, Dr. Charles Bahn, and Dr. Thomas Graham in determining her RFC. We review the propriety of the weight afforded each opinion below.

*Dr. Piper's opinion.* The ALJ gave great weight to Dr. Piper's opinion. Dr. Piper was a treating specialist whose opinion is "generally entitled to more weight." Hensley v. Barnhart, 352 F.3d 353, 356 (8th Cir. 2003). In June 2002, Dr. Piper stated:

> I have had the opportunity to look at [Coleman's] functional capacity evaluation. It appears that it was a valid study, and therefore I have released her to work *according to the restrictions detailed in that functional capacity evaluation*, which are for sedentary work.

R. at 194 (emphasis added). Whether a claimant can work sedentary work is a question for a vocational expert, not a medical source. See Medical Source Opinions on Issues Reserved to the Commissioner, Soc. Sec. Rul. (hereinafter SSR) 96-5p (July 2, 1996), 1996 WL 374183, at *5 ("Adjudicators must not assume that a medical source using terms such as "sedentary" and "light" is aware of our definitions of these terms. The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do . . . ."). In this case, there is no way to know what restrictions within sedentary work Dr. Piper intended since the residual functional capacity evaluation he relied on in releasing her to work is not in the record. Therefore his opinion does not aid in resolving whether Coleman needs to alternate positions (sit/stand), and if so, how frequently, or to what extent, if any, her latex allergy limits her ability to work.

The SSA regulations provide:

> Recontacting medical sources. When the evidence we receive from your treating physician . . . or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we *will* take the following actions.
> (1) We *will* first recontact your treating physician . . . or other medical source to determine whether the additional information is readily

available. We *will seek additional evidence or clarification* from your medical source when the report from your medical source *contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information*, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e) (emphasis added); see Snead v. Barnhart, 360 F.3d 834, 838-39 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case" to discover "evidence [which] might . . . alter[] the outcome of the disability determination"). Here, the ALJ neglected her duty to resolve the ambiguity in Dr. Piper's work release opinion through further inquiry. As a result, the district court erred in not remanding the case to the SSA for further development of the medical record. Specifically, the district court should have directed the SSA to (1) attempt to locate the residual functional capacity assessment relied on and referenced by Dr. Piper in his June 2002 opinion, and/or (2) submit interrogatories to Dr. Piper to determine what functional restrictions he believed were appropriate as part of the June 2002 work release.

*Dr. Birkett's opinion.* The ALJ rejected Dr. Birkett's opinion, finding it "not in accord with the evidence." R. at 20. Dr. Birkett opined in July 2004 that Coleman could not perform competitive work because she "would need to be very careful about the type of environment she would be working in due to latex allergy and severe back problems." R. at 261. The SSA does not dispute Coleman had an anaphylactic reaction to latex during an attempted back fusion surgery, as a result of which she spent two days in the intensive care unit. Further, physicians described her latex allergy as "severe." R. at 207 (Dr. Graham: "during the surgical procedure she

-5-

suffered a severe reaction to latex"); R. at 234 (Dr. Birkett: "[S]he was found to be dramatically allergic to latex and had a severe reaction."). On December 6, 2001, Dr. Francisco Peralta, an allergy and immune system specialist, stated (prior to Coleman undergoing a latex allergy test), "I would strongly recommend a *latex-free* environment until we ascertain the true nature of the patient's problems." R. at 162 (emphasis added). In February 2002, Dr. Piper reported, "They have discovered she does indeed have a latex allergy." R. at 203. In March 2002, Coleman was examined by Dr. William Boulden as part of a worker's compensation examination. He stated, "She is going to need a major job change because of her latex allergies." R. at 171. On June 21, 2002, Coleman was suspended from her laboratory cleaning job because, according to the human resources manager, "Dr. Francisco Peralta diagnosed you with a latex allergy, which requires you to work in a latex free environment." R. at 117. On January 15, 2003, another allergy specialist, Dr. Jay Brown, stated, "The patient . . . [reported her radioallergosorbent blood testing (RAST) for latex sensitivity] was quite positive though the degree of positivity was not specifically recalled by her." R. at 214. Dr. Brown, who was evaluating whether her reported hyperhydrosis (extreme sweating) was related to her latex allergy stated, "I did ask her to sign a release of records from Dr. Peralta to us so I can see the degree of latex sensitivity reflected in the RAST testing." R. at 214-215. Given the possibly dispositive nature of the inquiry into the extent of her latex allergy, the ALJ erred in not attempting to ascertain what Dr. Birkett meant by the "need to be very careful" in regards to her latex allergy and employment. The ALJ was required to attempt to get further information from Dr. Birkett to resolve this important issue. See 20 C.F.R. § 404.1512(e). Thus, the district court erred in not remanding the matter for clarification of Dr. Birkett's latex-exposure restrictions.

*Dr. Bahn's opinion*. The ALJ adopted the opinion of Dr. Bahn, the consulting, non-examining physician who testified by speakerphone at the September 2004 hearing. While Dr. Bahn recognized Coleman's latex allergy "was severe enough that they had to cancel the fusion surgery," R. at 282, he did not specifically address Coleman's latex allergy other than to state, "I think that she needs to avoid extreme

-6-

temperature changes, *toxic fumes*." R. at 283 (emphasis added). "It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment." Harris, 356 F.3d at 931. But "[t]he opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2002). The SSA regulations recognize "because nonexamining sources have no examining or treating relationship with [the claimant], the weight [the SSA] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(d)(3). Dr. Bahn failed to provide any supporting explanation for such a minimal restriction in light of Coleman's latex allergy. Given the above, we agree with Coleman the ALJ improperly relied on Dr. Bahn's opinion to the extent it failed to address Coleman's latex allergy.

*Dr. Graham's opinion*. The ALJ discounted the opinion of Dr. Graham, who examined Coleman as part of an agency disability determination. Dr. Graham opined: "Standing and moving about, walking, sitting for long periods of time would be very difficult for this patient. . . . this patient . . . could not sit for a *long period of time*." R. at 210 (emphasis added). Further, Dr. Graham found it would be very difficult for Coleman to work in dust or fumes and found she would "have to be *very, very careful* about any type of environment that would have latex in it because of her severe anaphylactic reaction that she had previously." R. at 210 (emphasis added).

In discounting Dr. Graham's opinion, the ALJ stated:

Certain aspects of Dr. Graham's opinion are consistent with the opinion of the medical expert and the conclusions reached in this decision. However, the undersigned has not assigned controlling weight to Dr. Graham's opinions for several reasons. The doctor's opinion is inconsistent with the claimant's treating physician's opinion, which is entitled to greater weight. In addition, it appears that the doctor relied heavily upon the claimant's subjective reports of pain and limitations,

and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, . . . there exist good reasons for questioning the reliability of the claimant's subjective complaints.  As reported by [Dr. Bahn], based on objective findings in the record, it would be reasonable to expect only a moderate level of pain.

R. at 19.  While not identified, we assume the "treating physician" referred to by the ALJ is Dr. Piper, since Dr. Piper's opinion is the only treating physician's opinion given great weight by the ALJ.  As noted above, missing from the record are the physical limitations described in the functional evaluation Dr. Piper references in his June 2002 opinion.  In the absence of a description of these limitations, there is no way to determine if Dr. Graham's assessment of Coleman's restrictions differs from that of Dr. Piper.  Thus, Dr. Graham's opinion that Coleman needed to shift positions is not inconsistent (on this record) with Dr. Piper's opinion she could work sedentary work.  We agree, however, Dr. Graham's opinion about Coleman's need to shift positions is quite vague:  It begs the question, "What is a long period of time?"  The record is of no help in answering this question, which is exactly the type of question 20 C.F.R. § 404.1512(e) requires the ALJ ask to clarify a medical opinion on a key issue.  Further, the functional evaluation Dr. Piper referenced may have contained work restrictions based on the potential for exposure to latex.  The uncertainty is a direct result of the ALJ's failure to develop the medical record.

Given the foregoing, the district court erred in failing to remand this matter to the SSA for clarification of Dr. Graham's opinion (through interrogatories or otherwise) as to the intervals of sitting and standing tolerated and the severity of the latex allergy.  As with the opinions of Dr. Piper and Dr. Birkett, the medical record should have been developed further on these issues which "might . . . alter[] the outcome of the disability determination."  Snead, 360 F.3d at 839.

B

Relatedly, Coleman also argues the ALJ erred in not including her need to alternate positions and her latex allergy in her RFC.

Even if Coleman's alleged need to shift positions is included in her RFC, she might not be disabled according to the SSA (i.e., she might be able to work some unskilled sedentary work). See Capability To Do Other Work—the Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work, SSR 83-12 (effective Feb. 26, 1979), 1983 WL 31253, at *4 ("In cases of unusual limitations of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base."); see also Carlson v. Chater, 74 F.3d 869, 871 (8th Cir. 1996) (noting SSR 83-12 met where vocational expert consulted as to whether particular alternating positions would exclude sedentary work; upholding determination that some sedentary jobs allow for shifting positions); see, e.g., Singh v. Apfel, 222 F.3d 448, 450-51 (8th Cir. 2000) (noting vocational expert determined a claimant who needed to alternate between sitting and standing could perform sedentary work such as security system monitor, inspector, or cashier). Thus, two questions must be answered to make a disability determination in this case concerning Coleman's back problems: (1) does she need to shift positions? (2) how often does she need to shift positions? Given the record as presently constituted, we find the ALJ wrongly answered the first question in the negative and never asked the second question.

The SSA argues Dr. Graham's and Dr. Birkett's opinions that Coleman needed to shift positions are inconsistent with the opinions of treating physicians Dr. Mark Palit and Dr. Piper, so the ALJ did not err in excluding a need to alternate positions from Coleman's RFC. The record does not support the SSA's position. The ALJ stated Dr. Palit cleared Coleman for work on December 8, 2001. This is incorrect. Dr. Palit merely indicated Coleman "was discharged home" after spending two days in the ICU related to experiencing an anaphylactic reaction. R. at 154. Dr. Palit

indicated at home she should (1) avoid heavy lifting, pushing, pulling, or twisting, (2) keep her surgery wounds clean and dry, and (3) follow up with Dr. Palit in twelve days. Id. Given the context, it is not surprising Dr. Palit made no reference to any work limitations.

Similarly, the ALJ found Dr. Piper released Coleman to work on April 29, 2002. This is also incorrect. Dr. Piper wrote to the worker compensation carrier:

> Apparently she has been disabled from her previous occupation strictly due to the fact that she would be exposed to latex in that environment, but I have explained to her that I think it would be vitally important to get a functional capacity evaluation to let her know what job she should and should not be looking at as options in the future. The workman's compensation nurse is going to schedule this functional capacity evaluation in the near future, which will guide her return to work activities.

R. at 196. Dr. Piper's statement says nothing about being released to work but only suggests further evaluation. Further, the SSA's reliance on Dr. Piper's June 2002 release of Coleman to sedentary work is faulty for the reasons addressed above—i.e., there is no way to know on the record before us whether he did or did not include in her restrictions a need to shift positions. In a footnote in its brief, the SSA notes neither Dr. Graham nor Dr. Birkett indicate the *frequency* of Coleman's need to change positions. Appellee's Br. 30 n.8. We agree. But given the potentially dispositive nature of this information, the ALJ was required to further develop the medical record as noted above. See 20 C.F.R. § 404.1512(e).

The SSA argues the ALJ considered Coleman's latex allergy by asking the vocational expert to consider a worker who needed to "avoid . . . toxic fumes." R. at 286. We disagree. Coleman is not allergic to "toxic fumes"; the word "latex" needs

to appear in the hypothetical to the ALJ.[1]  The state agency's own consulting physicians, Drs. Dennis Weis and J.D. Wilson, adopted a functional evaluation that stated Coleman needed to "avoid even moderate exposure" to "latex." R. at 226, 229. In our judgment, the SSA had an obligation under its own regulations to clarify the severity of Coleman's latex allergy by recontacting one or more of the physicians who indicated her allergies were severe or to try to locate the results of her RAST test (which is yet another key document not found in the record).  See 20 C.F.R. § 404.1512(e) (noting the SSA "will" recontact medical sources as appropriate where "ambiguity" must be resolved).  It is also significant if she must avoid: touching latex, exposure to airborne latex, and so forth.  Only after the extent of her allergy is determined, can the latex allergy limitations be incorporated into Coleman's RFC and posed to the vocational expert.

III

Accordingly, finding the SSA failed to properly develop the record, we reverse and remand the judgment of the district court with instructions to remand to the SSA for further development of the record and for an administrative rehearing consistent with this opinion.

_____

---

[1]Only Coleman's lawyer asked the vocational expert about "latex" and the vocational expert appears not to have reached the issue.