# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2407

_____

Shirl A. Roberson,

        Appellant,

    v.

Michael J. Astrue,[1] Commissioner of
the Social Security Administration,

        Appellee.

\*   Appeal from the United States
\*   District Court for the Eastern
\*   District of Missouri.

_____

Submitted: March 12, 2007
Filed: April 2, 2007

_____

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Shirl Roberson, who suffers from bipolar disorder, applied for social security disability insurance benefits and supplemental security income. After the Social Security Administration (SSA) denied her benefits initially, she received a hearing before an administrative law judge (ALJ), who concluded that she was not disabled and denied her claim. The Appeals Council denied review, and so the ALJ's decision

_____

[1]Michael J. Astrue has been appointed to serve as Commissioner of Social Security and is substituted as the appellee pursuant to Federal Rule of Appellate Procedure 43(c)(2).

became the final decision of the SSA. Ms. Roberson sought relief in district court,[2] which upheld the ALJ's decision, and Ms. Roberson appealed, contending that the administrative decision is not supported by substantial evidence. We affirm.

We review the district court's decision *de novo*. *See Pettit v. Apfel*, 218 F.3d 901, 902 (8th Cir. 2000). Like the district court, we review the decision of the ALJ for substantial evidence and adherence to the relevant legal requirements. *Id.*; *see also* 42 U.S.C. § 405(g). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). When deciding whether the ALJ's findings are supported by substantial evidence, we consider evidence in support of and contrary to those findings. *Pettit*, 218 F.3d at 902.

The SSA uses a five-step process to determine whether a social security claimant is disabled. *See* 20 C.F.R. § 404.1520. Here the ALJ first determined that Ms. Roberson was not engaged in substantial gainful activity, and decided at the next step that her bipolar disorder was a severe impairment, *i.e.*, one that "significantly limit[ed][her] physical or mental ability to do basic work activities," *see* 20 C.F.R. § 404.1520(c). At the third step, the ALJ concluded that Ms. Roberson did not meet the criteria for any of the listed impairments that are acknowledged to be so severe as to result in a conclusive presumption of disability. *See* 20 C.F.R. § 404.1520(d). Ms. Roberson's claim was denied at step four; the ALJ concluded that she was capable of performing her past relevant work as a computer programmer and was therefore not disabled. *See* 20 C.F.R. § 404.1520(f). If a claimant is unable to perform past relevant work, the burden shifts to the government to show that he or she cannot perform any other work in the economy. *See* 20 C.F.R. § 404.1520(g).

---

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

## I.

Ms. Roberson contends that she "arguably" met Listing 12.04 for bipolar disorder and thus should be presumed disabled. But we believe that the ALJ's conclusion that she did not meet a listing was supported by substantial evidence. Although Ms. Roberson had "bipolar syndrome," *see* Listing 12.04A3, in order to meet the listing, a claimant also must have two of the four restrictions listed in 12.04B. Ms. Roberson contends that she met that requirement because she had "[m]arked difficulties" both "in maintaining social functioning" and "in maintaining concentration, persistence, or pace." *See* Listing 12.04B.2,3. At the hearing, Ms. Roberson testified repeatedly that she had difficulty understanding instructions, remembering what she was told to do, focusing, and completing her work in a timely manner; she also mentioned having problems interacting with others in the workplace. But she did not offer medical evidence to support a finding that her limitations in those areas were "marked" or rose to a degree that prevented her from functioning satisfactorily. Thus we reject Ms. Roberson's contention that the evidence compels the conclusion that she met a listing.

## II.

Ms. Roberson also maintains that the ALJ erred in several respects in step four of the inquiry, in which he concluded that she could return to her work as a computer programmer.

She first contends that the ALJ failed fully to consider all of the evidence when assessing her residual functional capacity (RFC). Before determining whether Ms. Roberson was able to return to her past work, the ALJ was required to determine her RFC. *See* 20 C.F.R. § 404.1520(e). The RFC "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," despite his or her physical or mental limitations. S.S.R. 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996); *see* 20 C.F.R. § 404.1545(a).

The ALJ concluded that Ms. Roberson's mental impairment limited her ability to do work-related activities only by preventing her from performing work that involved complaints from the public and that she was not limited by any physical impairment. When determining a claimant's RFC, the ALJ must consider all relevant evidence, including the claimant's own description of her or his limitations, as well as medical records, and observations of treating physicians and others. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001); *see also* 20 C.F.R. §§ 404.1545, 404.1546.

Ms. Roberson contends that the ALJ's determination of her RFC is contrary to the medical evidence. In support of this contention, she refers to evidence from Dr. Howard Ilivicky, her treating psychiatrist; Dr. F. Timothy Leonberger, the SSA's consulting psychologist who examined her; and Dr. R. Rocco Cottone, a psychologist who evaluated Ms. Roberson, without examining her, at the initial stage of her claim. In his decision, the ALJ referred to the opinions of all of these experts.

Dr. Ilivicky began treating Ms. Roberson in 2000. At one point in her treatment, he found that she had "extreme mood swings, uncontrollable anxiety, [and an] inability to interact with people or handle stressful situations." Ms. Roberson contends that Dr. Ilivicky found that she was disabled, and she relies on a Family Medical Leave Act (FMLA) form that he completed in early August, 2002, about the time that she claims her disability began. On the FMLA form, Dr. Ilivicky stated that Ms. Roberson was unable to work; the doctor had last seen Ms. Roberson a week earlier and written in his office notes that she said that she "needed to go on disability" because of her bipolar disorder and that she was unable to work for the next four weeks. Thus Dr. Ilivicky did not state that she was or would be disabled for the twelve-month period required for social security benefits. *See* 42 U.S.C. §§ 416(i)(1), 1382c(a)(3)(A).

Ms. Roberson did not return to work after taking her FMLA leave. In October, 2002, SSA asked Dr. Ilivicky to complete a form assessing Ms. Roberson's limitations, but the doctor returned the uncompleted form, along with his office notes for Ms. Roberson. Though we question the ALJ's conclusion that Dr. Ilivicky's failure to complete the form indicates his belief that Ms. Roberson was not disabled, the blank form certainly cannot assist her in proving her claim. And, as the ALJ notes in his opinion, Dr. Ilivicky's office records from July, 2002, until late 2003 refer to Ms. Roberson's forgetfulness or decreased memory only twice, her racing thoughts once, and her increased rate of speech twice. Although they often state that Ms. Roberson had a "labile" affect (frequently fluctuating mood), the doctor often described the condition as "mild" or "slight." We do not believe that the ALJ's determination of Ms. Roberson's RFC was necessarily contrary to the opinion of her treating doctor.

After Dr. Leonberger met with Ms. Roberson and reviewed her records, he diagnosed her with cyclothymic disorder, which is similar to bipolar disorder, and involves chronic, fluctuating mood-disturbances. *See* American Psychiatric Association, Diagnostic Statistical Manual of Mental Disorders (4th ed.) 361-66. According to Dr. Leonberger, Ms. Roberson's condition sometimes caused her to be "restless" and "fidgety" and to speak rapidly, "which [made her] social interactions difficult."

Dr. Leonberger assessed Ms. Roberson's RFC in all areas of mental functioning. On the RFC form, the clinical psychologist concluded that Ms. Roberson had no more than a "moderate" limitation in any area, and a moderate limitation, as defined on the form itself, does not prevent an individual from functioning "satisfactorily." *See Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006). Dr. Leonberger found that Ms. Roberson's mental impairment "occasionally" disrupted her concentration and ability to persist on tasks and moderately limited her ability to understand, remember, and carry out detailed instructions. He concluded that Ms. Roberson had a mild to moderate limitation in concentration, persistence and pace, and a moderate limitation

in her ability to respond appropriately to work pressures and to routine work settings, and to interact appropriately with the public, supervisors, and co-workers. Although Dr. Cottone found that Ms. Roberson was "markedly" limited in her ability to understand, remember, and carry out detailed instructions, he described her other limitations as no more than moderate.

For the above reasons, we reject Ms. Roberson's contention that the ALJ's determination of her RFC is contrary to all of the medical evidence.

In assessing her RFC, Ms. Roberson also contends that the ALJ should have considered the side effects of her medication, but at the administrative hearing Ms. Roberson mentioned only that her medications made her somewhat tired. And when asked to explain her difficulties at work, she did not attribute her work-related problems to those side effects. And though Ms. Roberson refers on appeal to her complaints of physical pain, we note that when she was asked at the hearing what kept her from being able to work she made no reference to any physical problems.

Ms. Roberson also argues that the ALJ improperly determined that she was not credible and thus erred in failing to give her statements weight when determining her RFC. An ALJ may not reject a claimant's subjective complaints, such as Ms. Roberson's statements that she was unable to concentrate, sometimes had difficulty sitting still, became confused, was often tired, and had difficulty remembering and following instructions, based merely on the absence of objective medical evidence. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). But an ALJ may take the claimant's medical records into account when determining his or her credibility, and may discount the claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.* Here the ALJ recognized the *Polaski* considerations, and he took into account such matters as her daily activities, the effectiveness and side effects of her medication, the lack of restrictions placed on her

activities, as well as her medical records, before deciding that her statements regarding her inability to work were not credible. *See id.*

The ALJ noted the many daily activities that Ms. Roberson engaged in. Although a claimant need not be bedridden in order to be unable to work, *see Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005), Ms. Roberson engaged in extensive daily activities. She testified that she took care of her eleven-year-old child, drove her to school and did other driving, fixed simple meals for them, did housework, shopped for groceries, and had no difficulty handling money. After she separated from her husband, she continued to visit with him and with her son, who was in her husband's custody.

In determining her credibility, Ms. Roberson also argues that the ALJ should have considered a written statement from her husband that supported her testimony about the difficulties that she experienced at work. *Cf. Cox v. Barnhart*, 345 F.3d 606, 610-11 (8th Cir. 2003). We have held that an ALJ is not required to accept a statement from a witness who will benefit financially from a determination of disability, *Buckner v. Apfel*, 213 F.3d 1006, 1013 (8th Cir. 2000), although the record in such cases generally includes some indication that the ALJ rejected the evidence for that reason, *see id.* We nevertheless see no error here.

In addition, she argues that her work history exhibits a determination to remain employed, and should have been considered in support of her credibility. *See Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001). It might have been better if the ALJ had referred specifically to Ms. Roberson's work record when determining her credibility, and Ms. Roberson contends correctly that a credibility determination must be affirmatively linked to substantial evidence, *see Tang v. Apfel*, 205 F.3d 1084, 1087 (8th Cir. 2000); but we do not think that the ALJ was required to refer to every part of the record, and we think that the portions of the record that he referred to were

sufficient to support his credibility determination. *Cf. Eichelberger v. Barnhart*, 390 F.3d 584, 589-90 (8th Cir.2004).

Ms. Roberson also contends that the ALJ should have assigned greater weight to the opinion of Dr. Ilivicky, her treating psychiatrist, when determining her RFC. Though a treating doctor's opinion may sometimes be controlling, and is often given more weight than the opinions of non-treating physicians, *Singh v. Apfel*, 222 F.3d 448, 452; *see* 20 C.F.R. § 404.1527(d)(2), one difficulty here is that Dr. Ilivicky's opinion is unclear. Although he diagnosed Ms. Roberson with bipolar disorder and his office records refer to various symptoms over the years, as we have already said, we think that the evidence available at the time of the hearing did not clearly state Dr. Ilivicky's opinion of Ms. Roberson's ability to function in the workplace for a period of at least twelve months.

After her hearing, Ms. Roberson submitted additional records to the Appeals Council that were prepared after the ALJ denied her claim. These included, *inter alia*, Dr. Ilivicky's statements in November 2004 and January 2005. In these entries, Dr. Ilivicky stated that he did not think that Ms. Roberson was able to work. The Appeals Council will consider new evidence if it is material to the issue decided by the ALJ. 20 C.F.R. § 404.970(b). Evidence is material if it is "relevant to claimant's condition for the time period for which benefits were denied." *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). Here the Appeals Council concluded that the new records described Ms. Roberson's condition on the date that the records were prepared, not on an earlier date, and were therefore not material; it notified Ms. Roberson that the records would not be considered but that she could file a new claim if her condition had worsened since the ALJ made his decision. Medical evidence can, of course, provide information about a claimant's condition at an earlier date, *see Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000), but we have reviewed the records here and, though we believe that the question is close, we cannot say that the Appeals

-8-

Council erred in concluding that all of the new records referred to Ms. Roberson's condition after April 26, 2004, when the ALJ issued his decision.

Ms. Roberson also maintains that the ALJ substituted his own opinion for that of a medical expert. In his written decision, the ALJ said that Ms. Roberson's last employer, who terminated her from her position as a computer programmer, "stated that other employees had difficulties with the claimant because she did not listen well, and that the claimant had 'extreme' difficulty following instructions because she was quick to say she understood when she had not." Rather than attributing these difficulties to her bipolar disorder, the ALJ concluded, "in light of medical evaluation results, these characteristics could only reasonably be attributed to the claimant's inherent nature, not a mental impairment." According to Ms. Roberson, in reaching this conclusion the ALJ made a medical judgment. We are unsure of the basis for the ALJ's conclusion, especially given the "medical evaluation results" that refer to her difficulties in relating to others. But we do not think that this statement from the ALJ precludes the conclusion that his decision is supported by substantial evidence.

### III.

Accordingly, the judgment of the district court is affirmed.

_____