# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3580

———————

Walter E. Wagner,     *
    *
        Appellant,     *
    *    Appeal from the United States
        v.     *    District Court for the
    *    Northern District of Iowa.
Michael J. Astrue, Commissioner     *
of Social Security,     *
    *
        Appellee.     *

———————

Submitted: June 14, 2007
Filed: August 24, 2007

———————

Before MELLOY, SMITH, and GRUENDER, Circuit Judges.

———————

SMITH, Circuit Judge.

Walter Wagner appeals the district court's[1] order affirming the Administrative Law Judge's (ALJ) denial of Wagner's application for Social Security disability insurance benefits under 42 U.S.C. § 405(g). We affirm.

———————

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

## I. *Background*

Wagner, a 52-year-old male, worked as the chief of police in Ossian, Iowa, from 1977 until January 1, 2003. In November 2000, after suffering a knee injury, Wagner gained 40 pounds within one month. He was diagnosed with massive edema. Wagner was also diagnosed with nephrotic syndrome (caused by diabetic nephropathy secondary to poorly controlled diabetes), hypertension, coronary artery disease, Type II diabetes, and hyperlipidemia. During that same month, Wagner underwent quadruple bypass surgery. After leaving the hospital, Wagner returned to his job as chief of police. Throughout this time period, Dr. Gregory N. Tjossem, Wagner's family physician, monitored his health.

In January 2003, Dr. David Bakken, M.D., evaluated Wagner and diagnosed his shoulder pain as impingement syndrome. Dr. Bakken noted that Wagner's condition improved with the prescription drug Toradol. Thereafter, Dr. Robert P. Frantz, a cardiologist, found that Wagner's shoulder pain was non-cardiac. Wagner then visited Dr. Laurence F. Fuortes, M.D., Professor of Division of Occupational Medicine and Environmental Health at the University of Iowa Hospitals and Clinics, who stated that Wagner was "unable to perform the full duties of a police officer."

On February 20, 2003, Wagner applied for Title II Social Security benefits and Title XVI supplemental security income (SSI) benefits, alleging an inability to work since January 31, 2003, due to coronary artery disease, diabetes Type II, hypertension, impingement syndrome of the left shoulder, left knee pain from degenerative join disease, and obesity.

On May 21, 2003, Iowa state agency physician Dr. Richard Hornberger, a medical consultant for the Disability Determination Services Bureau, determined that Wagner could stand for at least two hours in an eight-hour workday, sit for approximately six hours in an eight-hour workday, lift up to 20 pounds occasionally

and 10 pounds frequently, and perform unlimited pushing and pulling. Dr. Hornberger found Wagner gave consistent and credible responses.

On June 26, 2003, the Social Security Administration (SSA) denied Wagner's application for Social Security and SSI benefits. On July 23, 2003, Wagner filed a request for reconsideration.

On October 8, 2003, the SSA requested that Dr. Tjossem examine and evaluate Wagner. Dr. Tjossem diagnosed Wagner with coronary artery disease, status post coronary artery bypass grafts times four, and Type II diabetes complicated by nephropathy, obesity, and left knee pain from degenerative joint disease. Dr. Tjossem opined that Wagner should not lift over 40 pounds more than a couple of times per day, should stand no more than 30 minutes before resting, and completely avoid stooping, climbing, kneeling, and crawling. He also stated that Wagner was currently unable to perform his duties as a police officer and was therefore limited to office or desk work.

On December 16, 2003, Iowa state agency physician Dr. Gary J. Cromer, a medical consultant for the Disability Determination Services Bureau, wrote that Wagner could stand at least two hours in an eight-hour workday, sit approximately six hours in an eight-hour workday, lift 35 pounds occasionally and 20 pounds frequently, and perform unlimited pushing and pulling. Dr. Cromer identified three inconsistencies in Wagner's subjective allegations of pain: (1) Wagner failed to pursue ongoing evaluation and treatment for conditions that he alleged were disabling; (2) Wagner took no pain medications for conditions that he alleged were disabling; and (3) Wagner's subjective report to the Disability Determination Services Bureau was much more severe than the symptoms that he reported to his treating physicians. Dr. Cromer stated that these inconsistencies "eroded the credibility of [Wagner's] subjective allegations." He noted that on January 23, 2003, Wagner did not seek any further treatment for his shoulder pain because such pain had "significantly

improved." Additionally, he noted that in October 2003, Wagner alleged chronic knee pain and left arm pain but did not take any pain medication. During that same year, Wagner also reported that he could walk for one-half mile to one mile, stand for 40 minutes, and lift 40 pounds. Dr. Cromer concluded that the opinion evidence was "symptom-based and not supported by objective findings."

As a result of Dr. Cromer's evaluation, the SSA reconsidered Wagner's case, concluded that its initial determination was correct, and again denied Wagner's claim. On February 5, 2004, Wagner requested a hearing before the ALJ.

On November 5, 2004, Dr. Tjossem opined that Wagner was completely disabled and could not work eight-hour days and 40-hour weeks.

In January 2005, Wagner's lawyer sent Dr. Tjossem a list of questions. In response to those questions, Dr. Tjossem wrote that Wagner suffered from coronary artery disease, poorly controlled diabetes, arthritis, impingement syndrome of the left shoulder, and morbid obesity. He also wrote that Wagner could not return to his previous occupation or perform a job with physical requirements. He imposed this limitation mainly because Wagner could only stand and walk for two hours out of an eight-hour day; could not climb, squat, or kneel; and could not lift anything over 40 pounds.

On February 14, 2005, the ALJ held a hearing. At that hearing, vocational expert Carmen Mitchell testified that Wagner could perform his past relevant work as chief of police, as generally performed in the national economy, but not as Wagner performed the job in the small town of Ossian, Iowa.

The ALJ determined that Wagner was not disabled and was not entitled to SSI benefits. The ALJ found that Wagner had the following impairments: coronary artery disease, impingement syndrome of the left shoulder, and Type II diabetes. The ALJ

concluded that Wagner's impairments were not equivalent to one of the listed impairments and also determined that Wagner was able to perform his past relevant work. The ALJ defined Wagner's residual functional capacity (RFC) as follows:

> lifting 20 pounds occasionally and 10 pounds frequently; sitting up to 90 minutes at a time for a total of 6 hours in an 8-hour workday; standing 30 minutes at a time; occasionally stooping, balancing, kneeling, crouching, crawling and climbing stairs but never climbing ladders; occasionally reaching overhead with the left extremity and in all directions; working in environments with frequent exposure to heat, humidity, dust and fumes. Additionally the claimant would require consideration for limited but fairly good vision in the right eye.

Wagner requested review of the ALJ's decision, and the SSA Appeals Council denied Wagner's request for review. Wagner then filed a complaint in federal district court, seeking judicial review of the Commissioner of Social Security's decision, arguing that: the ALJ (1) improperly disregarded Dr. Tjossem's November 5, 2004 opinion; (2) failed to call his treating physician to clarify the treating physician's opinions; (3) improperly rejected his subjective complaints of pain; and (4) failed to include a total standing limitation per eight-hour workday, resulting in limiting him to sedentary work.

The district court rejected Wagner's arguments. First, the district court found that the ALJ properly weighed and considered Dr. Tjossem's opinions and the state agency physicians' opinions. The district court concluded that Dr. Tjossem's November 5, 2004 opinion that Wagner was "completely disabled and unable to work full-time" was inconsistent with his February 5, 2005 opinion and October 8, 2003 opinion. Dr. Tjossem failed to note any changes in Wagner's care or condition between October 8, 2003 and February 5, 2005 to account for such inconsistencies. Therefore, the district court concluded that "expressing the opinion that Wagner can lift up to forty pounds and stand for two hours out of an eight-hour day (for thirty

minutes at a time) is inconsistent with stating that Wagner is completely unable to work full time." The district court also noted that the ALJ did give Dr. Tjossem's other opinions significant weight but not controlling weight. The court determined that the ALJ did not err in giving the state agency physicians' opinions more weight than Dr. Tjossem's opinions because consultative physicians' opinions may constitute substantial evidence when a treating physician offers inconsistent opinions.

Second, the district court found that Wagner failed to cite any authority stating that the ALJ must contact the treating physician for clarification if one of the treating physician's opinions is inconsistent with that physician's other opinions. Furthermore, the district court concluded that Dr. Tjossem's opinions were not cursory or in need of additional clarification, as he specifically outlined the symptoms and conditions that formed the basis of his opinions.

Third, the district court concluded that the evidence as a whole supported the ALJ's conclusion that Wagner's daily activities and the medical record were inconsistent with Wagner's disability claims. According to the district court, the ALJ did not find Wagner's testimony fully credible because Wagner was able to perform daily living activities with minimal limitation, such as taking care of himself and performing household chores, including laundry, washing dishes, changing sheets, taking out the trash, home repairs, and vacuuming. Wagner also stated that he spent time on the computer, watched television, visited friends at their homes and at cafes, and read magazines and newspapers. The district court found most significant the ALJ's consideration of state agency physician Dr. Cromer's opinion that Wagner's subjective allegations of pain were inconsistent.

Fourth, the district court found that while the ALJ did not include a total standing limitation in a full workday, the ALJ did state that Wagner could sit up to six hours each day. Thus, it is reasonable to assume that the remaining two hours of the workday, left unaccounted for, would be spent standing. The district court found that

such an inference was supported by the fact that the ALJ knew of Wagner's standing limitations and included a two-hour standing limitation in his hypothetical question to the vocational expert. Therefore, the district court determined that the ALJ's failure to announce the number of hours that Wagner could stand within an eight-hour workday did not have any effect on his decision.

Finally, the district court found that the substantial weight of the evidence supported Wagner's ability to perform his job of chief of police as it is generally performed in the national economy because the relevant work does not require performance of work-related activities precluded by his RFC. Furthermore, the district court found that the substantial weight of the evidence established that Wagner's coronary artery disease status-post quadruple bypass, hypertension and hyperlipidemia, diabetes Type II, degenerative joint disease of the left knee, and impingement syndrome of the left shoulder do not prevent Wagner from performing his past relevant work as it is generally performed in the national economy.

Therefore, the district court affirmed the ALJ's decision.

## II. *Discussion*

Wagner raises three arguments on appeal. First, he argues that the ALJ improperly disregarded Dr. Tjossem's November 5, 2004 opinion that Wagner was completely disabled and unable to work 8-hour days and 40-hour weeks. Second, he asserts that the ALJ erred in finding that his daily activities detracted from the credibility of his subjective complaints. Finally, Wagner contends that the ALJ erred in determining that his past work was the same as the sedentary job of police chief and that he was capable of "returning" to that past work.

We review de novo the district court's affirmance of the Commissioner of Social Security's denial of social security benefits. *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002). If the ALJ's findings are supported by substantial evidence

on the record as a whole, we will affirm the ALJ's decision. *Id*. In undertaking this review, we do not merely examine the record for the existence of substantial evidence supporting the Commissioner's decision but also consider evidence that detracts from that decision. *Id*.

## A. *Medical Opinions*

According to Wagner, substantial evidence does not support a finding that he can perform limited sedentary work on a full-time basis. Wagner contends that the ALJ erroneously disregarded selected opinions of his treating physician, Dr. Tjossem, without good cause and instead relied on inconsistent, unsubstantiated, and less thorough opinions from non-examining, non-treating doctors employed by the SSA.

In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. § 404.1527(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

The SSA regulations set forth how the ALJ weighs medical opinions. The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight . . . [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship, (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. § 404.1527(d). The regulations provide that if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques

-8-

and *is not inconsistent with the other substantial evidence in [the applicant's] record*, [the ALJ] will give it controlling weight." *Id*. at § 404.1527(d)(2) (emphasis added).

"[T]he hearing examiner need not adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment." *Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir. 1998) (internal quotations and citations omitted). Likewise, while a treating physician's opinion is generally entitled to "substantial weight," such an opinion does not "automatically control" because the hearing examiner must evaluate the record as a whole. *Wilson v. Apfel*, 172 F.3d 539, 542 (8th Cir. 1999). "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Prosch v. Apfel*, 201 F.3d 1010, 1013–14 (8th Cir. 2000). "Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id*. at 14 (internal quotations and citations omitted).

"When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions." *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000)."As a general matter, the report of a consulting physician who examined a claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Id*. (internal quotations and citations omitted). This court, however, has recognized two exceptions to this general rule:

> We have upheld an ALJ's decision to discount or even disregard the opinion of a treating physician (1) where other medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.

*Id*. (internal quotations, alterations, and citations omitted).

For example, in *Anderson v. Barnhart*, 344 F.3d 809 (8th Cir. 2003),we held that the ALJ could credit the opinion of the consulting physician over that of the claimant's family physician because of inconsistencies in the family physician's opinions. In *Anderson*, the claimant argued that the ALJ erroneously discounted the statements of his treating physician, claiming that the ALJ improperly gave controlling weight to the "one time examining opinion" of a consulting physician instead of his family physician. *Id*. at 812. We rejected the claimant's argument, explaining that the ALJ gave "little weight" to the family physician's opinion "because of its internal inconsistencies." *Id*. at 813. The ALJ supported this conclusion by noting that the family physician's statement concerning the claimant's need to take a break every 45 minutes was inconsistent with his statement that the claimant had an unimpaired ability to walk. *Id*. Additionally, we noted that the ALJ did not credit the family physician's opinion because while the physician stated that the claimant had physical impairments, he did not note any limitations regarding the claimant's ability to lift and carry and to stand and walk. *Id*. Finally, we considered the ALJ's statement that the family physician "modified his answers" concerning the claimant's restrictions after a discussion with the claimant's attorney. *Id*. Based on our review of the record, we held that the ALJ properly credited the consulting physician's opinion over the family physician's opinion. *Id*. While we acknowledged that the consulting physician "did not have the same treating relationship that [the family physician] had with [the claimant]," we concluded that the consulting physician's opinion "was not tainted with the apparent inconsistencies of the [family physician's] assessment." *Id*.

Likewise, in *Guilliams v. Barnhart*, 393 F.3d 798 (8th Cir. 2005), we rejected the claimant's contention that the ALJ failed to give sufficient weight to an orthopedic surgeon who opined that the claimant had "physical limitations" and was "physically disabled from gainful labor-type employment." *Id*. at 803. We stated that "[p]hysician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies." *Id*. The surgeon's report contained several inconsistencies because it stated that the claimant was "totally disabled" but

also concluded that the claimant "would be an excellent candidate for vocational rehabilitation evaluation." *Id*.; *see also Vandenboom v. Barnhart*, 421 F.3d 745 (8th Cir. 2005) (holding that substantial evidence supported decision not to give controlling weight to treating neurologist's opinion that claimant was disabled where, *inter alia*, the neurologist's opinion was inconsistent with two prior opinions).

Most recently, in *Travis v. Astrue*, 477 F.3d 1037 (8th Cir. 2007), the claimant contended that the ALJ did not give the opinions of his two treating physicians appropriate weight. *Id*. at 1041. We upheld the ALJ's decision, finding that the treating physicians' opinions "were inconsistent with the record as a whole." *Id*. For example, one of the treating physicians wrote in a letter that the claimant could not hold down a job in a productive manner but, two months later, wrote that she "feels great." *Id*.

We conclude, as in *Anderson*, *Guilliams*, and *Travis*, that the ALJ was entitled to discount Dr. Tjossem's November 5, 2004 opinion because it was inconsistent with his October 8, 2003 opinion and February 5, 2005 opinion. Dr. Tjossem, in his November 5, 2004 opinion, stated that "Walter [Wagner] is 100% disabled from any type of employment, certainly one that involves 8 hour days and 40 hour weeks." In contrast, Dr. Tjossem's October 8, 2003 opinion and February 5, 2005 opinion did not conclude that Wagner was completely disabled and unable to work and instead suggested, as the ALJ noted, that Wagner had a "capacity for sustained employment." While the opinions acknowledged that Wagner could not perform a physically demanding job, they concluded that Wagner was still capable of performing office and desk work and set forth specific restrictions on his ability to perform work activities.[2]

---

[2]Dr. Tjossem's October 8, 2003 opinion provided that Wagner (1) could lift up to 40 pounds; (2) could stand for 30 to 40 minutes at a time; (3) should not climb, squat, or kneel; (4) should alternate between sitting and standing periodically; and (5) is "unable to perform his previous duties as a law enforcement officer. At his current medical condition he is limited to office/desk work."

We also note that the ALJ did not completely disregard Dr. Tjossem's opinions, as he concurred with the opinions "to the extent that the claimant can no longer perform his duties as a law enforcement officer, but is capable of performing office or desk work." Instead, the ALJ chose to discount the November 5, 2004 opinion because he found "no medical evidence to support Dr. Tjossem's more restrictive opinion . . . which indicates that the claimant is totally disabled and unable to sustain employment."

## B. *Credibility*

Wagner's second argument is that the ALJ erred in finding that his daily activities detracted from the credibility of his subjective complaints.

"Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility." *Pearsall*, 274 F.3d at 1217.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;

---

Dr. Tjossem's February 5, 2005 opinion provided that Wagner was "[u]nable to do any job with physical requirements." As to restrictions placed on Wagner's ability "to perform in competitive work activities," Dr. Tjossem responded, "No lifting [over] 40 lbs. Standing and walking limited to 2 hrs in an 8 hr. day. No climbing, squatting, kneeling."

3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (emphasis in original). "[A]n ALJ need not explicitly discuss each *Polaski* factor." *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (internal quotations and citation omitted). "An ALJ who rejects such [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall*, 274 F.3d at 1218.

"This court has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Singh*, 222 F.3d at 453. "In evaluating a claimant's RFC, consideration should be given to the quality of the daily activities and the ability to sustain activities, interests, and relate to others *over a period of time* and the frequency, appropriateness, and independence of the activities must also be considered." *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007) (internal quotations and citations omitted) (emphasis in original). "A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications." *Singh*, 222 F.3d at 453. "A failure to follow a recommended course of treatment also weighs against a claimant's credibility." *Guilliams*, 393 F.3d at 802.

-13-

In *Roberson v. Astrue*, 481 F.3d 1020 (8th Cir. 2007), the claimant argued that the ALJ erroneously determined that she was not credible and therefore erred in failing to give her statements weight in determining her RFC. *Id.* at 1025. The ALJ had noted the "many daily activities" that the claimant engaged in. *Id.* We stated that while a claimant "need not be bedridden in order to be unable to work," the claimant did engage in "extensive daily activities." *Id.*

> She testified that she took care of her eleven-year-old child, drove her to school and did other driving, fixed simple meals for them, did housework, shopped for groceries, and had no difficulty handling money. After she separated from her husband, she continued to visit with him and with her son, who was in her husband's custody.

*Id.*; *see also Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (deferring to the ALJ's credibility determination, as the claimant "made inconsistent reports of her activities of daily living, such as the ability to: regularly drive a manual-transmission vehicle; shop; perform housework, such as cooking, cleaning, and washing dishes; fish; attend church two to three times per week; care for her personal needs; and home-school her two children"); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ considered [the claimant's] testimony and found that it was inconsistent with the record as a whole. In short, the ALJ concluded that [the claimant's] daily living activities—including the care of her special needs children, bill paying, laundry, and cooking—were inconsistent with her allegation of total disability. . . . The ALJ also noted [the claimant's] medical non-compliance. Not only would [the claimant] regularly miss medication checks and psychiatric appointments, but she did not take her medications as prescribed."); *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) ("Moreover, Young stated in her disability report that she cooked, cleaned, did laundry, shopped, studied Russian, and exercised, and the ALJ found that during the relevant period she functioned as the primary caretaker for her home and two small children. This evidence further confirms Young's ability to work on a daily basis in the national economy."); *Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir. 1999) (stating

that the ALJ noted the claimant's daily activities were inconsistent with his complaints of disabling pain, as the claimant's daily activities included: "driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between her classes, watching television, and playing cards").

Here, the ALJ found that Wagner's testimony was credible to the extent that he had been diagnosed with and treated for multiple medical conditions that had progressive residual effects over the long term. The ALJ also found it reasonable that Wagner's level of deconditioning and obesity impacted his level of functioning. The ALJ, however, did not find Wagner's testimony fully credible because "the claimant continues to participate in activities of daily living with minimal limitation" and because of "inconsistencies cited within the record by the State agency physicians."

The information that Wagner provided in the "Daily Activities Questionnaire" supports the ALJ's conclusions. First, Wagner stated that he "regularly" performs the activities of self-care, such as bathing/showering, dressing, shaving, and hair care. Second, he stated that he "regularly" does the laundry, dishes, changes sheets, takes out the trash, and does home repairs. He acknowledged at the hearing before the ALJ that "[d]ay to day chores are not a real problem" for him. Third, he noted in the questionnaire that he (1) "almost daily" prepares meals at the home; (2) does the grocery shopping and other household shopping without assistance; (3) goes to the bank and to medical appointments without assistance; (4) drives two to three times per week; (5) enjoys working on the computer, watching TV, and reading a variety of magazines and newspapers; (6) visits friends at their residences or at public meeting areas a couple of times per week; and (7) gets involved socially on a weekly basis.

Therefore, as in *Roberson*, *Pirtle*, *Tellez*, *Young*, and *Riggins*, Wagner engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends.

-15-

Additionally, state agency physician Dr. Cromer identified inconsistencies in Wagner's subjective complaints of pain. Specifically, he opined, "Subjective reports reveal inconsistencies in that claimant has not pursued ongoing evaluation/treatment and takes no pain medications for conditions he alleges are disabling." For example, Wagner alleged disability due to coronary disease, but he complained of chest pressure and shoulder pain on only one occasion. Also, Wagner alleged that his left shoulder and knee caused disabling pain; however, he took no pain medication on a regular basis for his shoulder, even though he received such medication on two occasions, and he never received pain medication for his knee pain.

As we noted in *Singh*, the ALJ could discredit Wagner's subjective complaints of pain based on Dr. Cromer's observations and evidence that Wagner received minimal medical treatment for some of his alleged disabling conditions and has failed to take pain medication for such conditions.

## C. *Past Relevant Work*

Finally, Wagner argues that the ALJ erred in determining that his past work was the same as the sedentary job of police chief and that he was capable of "returning" to that past relevant work. According to Wagner, the ALJ erred in assessing his past relevant work as "police chief" because he had never performed this type of job and lacked the transferable skills, specific vocational preparation, and RFC to perform it. He concedes, however, that the SSA and the courts have allowed consideration of whether a claimant could perform work not as a claimant did it, but "as it is generally performed in the national economy." He also notes that the Fourth Circuit, in *Smith v. Bowen*, 837 F.2d 635 (4th Cir. 1987), held that 20 C.F.R. § 404.1566(e) authorizes the use of a vocational expert only at step five of the sequential evaluation process, meaning that reliance on a vocational expert is improper in determining whether a claimant can return to past relevant work.

"The Social Security Act sets out five steps for the ALJ to use when reviewing a claimant's request for disability." *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996) (citing 20 C.F.R. §404.1520). "The relevant step in this case is step four in which the ALJ must consider whether a claimant's impairments keep her from doing past relevant work." *Id*. (citing 20 C.F.R. § 404.1520(e)). The ALJ will find that a claimant is not disabled if he retains the RFC to perform:

1.      The actual functional demands and job duties of a particular past relevant job; or

2.      The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

*Id*. (quoting Social Security Ruling ("S.S.R.") 82-61) (citing *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990) (approving of this S.S.R. 82-61 test and holding that a claimant who cannot perform a particular past job may still be able to perform her past relevant work under the second part of the test)); *see also Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000) ("Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled.").

The regulations provide that the ALJ may elicit testimony from a vocational expert in evaluating a claimant's capacity to perform past relevant work. 20 C.F.R. § 404.1560(b)(2) ("We may use the services of vocational experts or vocational specialists . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."). This court has implicitly approved of an ALJ considering vocational expert testimony at step four of the evaluation process. *See Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994) (rejecting claimant's argument that the ALJ "did not set forth all of his impairments in the hypothetical question posed to the vocational expert " when determining that

the claimant was "not capable of performing his past relevant work as a security guard"). Likewise, the Eleventh Circuit, Tenth Circuit, and Fifth Circuit have all recognized that the ALJ may rely on the testimony of a vocational expert in making the necessary findings at step four. *See, e.g.*, *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 Fed. Appx. 343, 346 (11th Cir. 2005) (unpublished) (holding that the ALJ did not err in considering the vocational expert's testimony in deciding whether the claimant could perform past relevant work); *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996) ("We are not suggesting, as has the Fourth Circuit, *see Smith v. Bowen*, 837 F.2d 635, 637 (4th Cir. 1987), that the ALJ may not rely on VE testimony in making the necessary findings at step four."); *Thomas v. Shalala*, 56 F.3d 1385 (5th Cir. 1995) (rejecting *Smith* and holding that "it is within the Secretary's discretion to rely on the opinions of a vocational expert" in determining past relevant work). *But see Smith*, 837 F.2d at 637 (holding that ALJ could not base decision that disability claimant could do her past relevant work on testimony of vocational expert).

Applying relevant precedent to the present case, Wagner's argument that the ALJ erred by looking at the past relevant work as generally required by employers in the national economy necessarily fails, as we approved of such analysis in *Martin* and *Lowe*. Therefore, the ALJ could properly look at the "functional demands and job duties" of a "chief of police" as required by employers in the national economy.

Additionally, Wagner's argument that the ALJ improperly relied on the testimony of a vocational expert in determining past relevant work also fails, as this court implicitly approved of such reliance in *Haynes*, and the majority of our sister circuits permit such reliance.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____