**Robin Diane HULEN, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**No. 3:11–cv–150 RP–RAW.**

United States District Court, S.D. Iowa, Davenport Division.

Dec. 19, 2012.

William C. Purdy, U.S. Attorney's Office, Des Moines, IA, for Defendant.

Jodee R. Dietzenbach, Law Offices of Thad J. Murphy PC, Dubuque, IA, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

ROBERT W. PRATT, District Judge.

Plaintiff, Robin Diane Hulen, filed a Complaint in this Court on December 5, 2011, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

In the Notice of Decision—Unfavorable dated March 4, 2011, the Administrative Law Judge recited the procedural history of the case to that point:

This case is before the Administrative Law Judge, pursuant to an order of the Appeals Council. The claimant filed an application for Disability Insurance Benefits and Supplemental Security Income payments on September 11, 2007. The claims were denied initially and on reconsideration, and a request for hearing was timely filed. A hearing was held on this case initially on December 22, 2009 with the claimant and a vocational expert testifying. In a decision dated January 15, 2010, the undersigned found that the claimant retained the residual functional capacity to return to past relevant work and was not disabled (Exhibit B7A). The claimant requested Appeals Council review of this decision and in an Order dated August 27, 2010 the Appeals Council vacated the hearing decision and remanded the case for further evaluation and proceedings (Exhibit B8A). In its remand order, the Appeals Council directed the undersigned to further evaluate the claimant's subjective complaints and evaluate the claimant's obesity and if warranted, obtain supplemental evidence from a vocational expert.

The ALJ went on to note that a second hearing was held on December 21, 2010. Tr. at 11.

As noted, on August 27, 2010, the Appeals Council issued a Notice of Order of Appeals Council Remanding Case to Administrative Law Judge. Tr. at 97–99. The Appeals Council found the ALJ had erred by failing to evaluate Plaintiff's credibility as required by Social Security Ruling (SSR) 96–7p, and by failing to evaluate Plaintiff's obesity as required by SSR 02–1p. Regarding the obesity evaluation, the Appeals Council judges wrote:

The hearing decision does not contain an evaluation of the claimant's obesity, as required under SSR 02–1p. That ruling states that the functional effects of obesity alone or in combination with other impairments be evaluated and that an assessment be made of the effect obesity and/or other impairments have upon the individual's ability to perform routine movement and necessary physical activity within the work environment. The claimant is four feet eleven inches tall and her weight is 158 pounds. The claimant's Body Mass Index (BMI) calculates to 31.9 which according to the National Institutes of Health and Social Security Ruling 02–1p, falls under the BMI category of Type I obesity. Consideration of the claimant's obesity with other impairments and its functional impact on [her] functioning is necessary under SSR 02–1p.

Tr. at 98–99. The order of the Appeals Council was, among other things, that on remand, the ALJ was to "evaluate the claimant's obesity in accordance with Social Security Ruling 02–1p." Tr. at 99.

In the March 4, 2011 decision, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2007. Using the familiar five step sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity after February 9, 2006, the alleged onset of disability date. The ALJ found Plaintiff has the following severe impairments: depression, bipolar disorder, anxiety, osteoarthritis of the knees and obesity. Tr. at 13. The ALJ found that Plaintiff's impairments were not severe enough to qualify for benefits at the third step of the sequential evaluation. Tr. at 15. At the fourth step, that ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to only occasional balancing, stooping, kneeling, crouching or crawling; must avoid concentrated exposure to unprotected hazardous machinery and mentally is limited to unskilled work with no strict quotas and no fast paced assembling work but rather where the emphasis is on completing the work in an 8–hour shift rather than an hourly production basis; jobs with limited stress and limited to only occasional interaction with people.

Tr. at 17. The ALJ wrote: "Despite her increasing weight gain, there was no mention of concerns of obesity or any effects upon her other impairments." The ALJ wrote that he considered Plaintiff's degenerative arthritis of the knees and obesity in finding that Plaintiff is limited to light work. He went on: "She does not demonstrate pain or limitation of such severity as to prevent this limited range of light work activity. She does not seek regular medical care and the consultative examination in 2007, revealed minimal findings upon examination." Tr. at 18. The ALJ wrote:

"Although the undersigned has given her allegations of physical and mental functional limitations some credit, and have considered her obesity with her other impairments, there is no evidence of limitations more than those indicated in the RFC above." The ALJ found that Plaintiff is able to perform her past relevant work as a housekeeper. Tr. at 19. The ALJ found that Plaintiff is not disabled nor entitled to the benefits for which she applied. Tr. at 21.

## MEDICAL EVIDENCE

Although the Court has read each page of the evidence in this case, an entry by entry summary of the medical records will not add to the Court's analysis. Plaintiff was treated for various medical problems at the University of Iowa Hospitals and Clinics and at the Davenport (Iowa) Medical Center. Plaintiff was treated for right knee pain for which the diagnoses were chondromalacia and/or degenerative joint disease. She also sought mental health care at Vera French Community Mental Health Center in Davenport Iowa. At the mental health center, Plaintiff sought treatment from both psychiatrists and other mental health professionals for depression, anxiety, post traumatic stress disorder, agoraphobia and panic attacks, and for personal relationship problems. An Appendix to Plaintiff's brief which summarizes each of the medical record entries was quite helpful to the Court as it sorted out the voluminous record.

On November 14, 2007, Plaintiff was seen for a consultative physical examination by Stanley Rabinowitz, M.D. at the request of Disability Determination Services. Tr. at 790–93. Dr. Rabinowitz also attached a range of motion chart. Tr. at 794–95. The doctor wrote: "The following medical history was provided for my review: None." Tr. at 790. Plaintiff reported a 33 year history of bilateral knee pain

for which she was taking Relafen. Reporting the history given to the doctor by Plaintiff, the doctor wrote:

> She complains of pain and intermittent swelling of the knees which has grown progressively worse and she reports shifting of the patella bilaterally. The knees swell and are stiff and x-rays of the knees in the past have demonstrated degenerative arthritic changes and a suggestion of possible pigmented villonodular synovitis. There is no prior history of trauma. The patient lacks funds for appropriate surgical intervention for the knee pain. She has been seen at the Community Health Clinic in Davenport. She last worked in 2003. The patient has difficulty kneeling, squatting, bending, climbing a ladder or attempting to climb steps. She does limited household chores. The patient is able to perform the usual activities of daily living.

Tr. at 790. On physical examination, Plaintiff's height was recorded a 58 inches and her weight was 170 pounds. It was noted that Plaintiff wore bilateral knee braces, and used a cane for assistance in walking. Tr. at 791. "There was crepitus and pain evident on examination of the knees. There was full range of motion and mild warmth on examination of the knees. No instability, contracture or paravertebral muscle spasm was evident." The doctor's impression was: "History of advanced degenerative joint disease, knees, bilateral with [possible] pigmented villondular synovitis." Tr. at 792. The doctor offered no opinion of Plaintiff's residual functional capacity.

. On November 14, 2007, Plaintiff was seen by Susan R. Wood, Ed. S. for a psychological evaluation. Tr. at 796–801. Ms. Wood noted that no records had been given her for review. Tr. at 796. It was noted that Plaintiff was living in a homeless shelter. Tr. at 798. At the conclusion of her report, Ms. Wood wrote:

Ms. Robin Diane Hulen, a 40–year old female client, was referred for completion of a mental status examination. Her early history was significant for a possible reading disorder, although no formal diagnosis or treatment while in school. Social anxieties reportedly dated back to childhood. Ms. Hulen was married once, and this relationship was reported to be abusive. She appeared to have suffered symptoms of PTSD following her divorce in 1993 and stated that she lost her children amidst financial struggles. Her three children were subsequently placed in adoptive homes and her rights were terminated. In 1996, she was convicted of a sexual offense with a minor child (age 15), however, maintains her innocence. She was later convicted of failing to register as a sex offender. While she has worked in a variety of lower skilled positions (sales, cashiering, food preparation, and telemarketing), she has not worked since 2003, citing knee problems and anxiety as reasons why she has not pursued employment.

At the present time, Ms. Hulen would appear to be experiencing symptoms of anxiety, primarily related to social interaction or the anticipation of social situations. She also endorses signs of a panic disorder at times. She is not presently being treated for anxiety through medication or therapy. She maintains that medication never worked for her, however, there is no information available regarding her treatment history or response to intervention. She also seems to experience stress when placed in performance situations, such as in a work environment where she has to remember directions, procedures, or remember customer orders. She has difficulty expressing the need to have information repeated and this results instead in frustration and irrita-

tion. While Ms. Hulen maintained she has a history of Bipolar Disorder, presentation of symptoms was much less clear with regard to this diagnosis. Based on client comments regarding medications, it did not appear that she has ever been treated for a mood disorder, however, obtaining records from Vera French Community Mental Health could clarify this. In light of the fact that Ms. Hulen has not received treatment for her mental health needs in a number of years, it may be beneficial to determine whether or not therapy or medication could be of benefit in treating her anxiety or panic symptoms.

Tr. at 800–01. Diagnoses, on Axis I, were: Panic disorder without agoraphobia; social phobia, generalized; posttraumatic stress disorder, by history; and, rule out bipolar disorder. Tr. at 801. A review of the records from Vera French Mental Health Center, reveals that Plaintiff was, in fact, treated for depression, both unipolar and bipolar, as well as for panic disorder with agoraphobia. These records, however, were not available to Ms. Wood. Neither Ms. Wood nor the doctors at Vera French were asked to offer an opinion regarding Plaintiff's mental residual functional capacity.

## DISCUSSION

■ We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts from the ALJ's decision. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir.2004).

We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir.2008). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir.2007)). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005).

*Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir.2008.)

Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance. *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir.2008). We consider the record as a whole, including evidence that detracts from, as well as supports, the Commissioner's decision. *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir.2005).

*Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir.2012).

■ In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel*, 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir. 1975).

Plaintiff raises two arguments. First, that the ALJ improperly discredited Plaintiff's complaints of pain, substituting his judgment for that of the treating physician, and failing to follow SSR 96–7p, as required by the Appeals Council Order of Remand. Second, Plaintiff argues that the ALJ erred by failing to properly evaluate

Plaintiff's obesity, as required by the Order of Remand.

■ As noted above, on remand the ALJ was instructed to evaluate Plaintiff's obesity pursuant to SSR 02–1p, 2000 WL 628049 (S.S.A.). Although the ALJ noted that he considered Plaintiff's obesity, his analysis is unsupported by any evidence whatsoever. For example, SSR 02–1p states that obesity is a medical condition diagnosed on the basis of a body mass index (BMI) which is the ratio of weight in kilograms to the square of height in meters. The SSR states that three levels of obesity are recognized: Level I includes BMIs of 30.0–34.9; level II includes BMIs of 30.0–39.0; and, level III, termed "extreme" obesity includes BMIs greater than or equal to 40. The greater the level, the greater the risk for obesity related impairments. Here, the Commissioner has determined that Plaintiff's severe impairments include obesity. However, There is no medical evidence in the record which precisely establishes what is Plaintiff's BMI or what is her level of obesity. On October 27, 2009, Plaintiff's weight was reported to be 183 pounds and her height is 4 feet, 11 inches. Tr. at 880. A rough calculation provides a BMI of 37.0, but that is hardly evidence on which to support a finding of disabled or not disabled. Furthermore, Plaintiff testified that she has been gaining weight, but there is no medical evidence to support such a statement. A remand to obtain medical evidence to answer these questions is appropriate and necessary given the previous order of remand from the Appeals Council.

A proper understanding of the level of obesity is necessary at two places in the sequential evaluation. At step 3, according to the SSR, obesity may be a factor in both "meets" and "equals" determinations. "For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments, including mental disorders." In the case at bar, Plaintiff suffers from both musculoskeletal and mental disorders. Obesity could be a factor in each of those coexisting impairments, but there is no medical evidence to support such a finding one way or the other.

Discussing the evaluation of obesity at steps 4 and 5 of the sequential evaluation, the SSR states:

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96–8p (Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities ·on an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. [footnote omitted] In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

The combined effects ·of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

In the case at bar, Plaintiff suffers from both degenerative joint disease and from a mental impairment both of which may be

exacerbated by her obesity. This requires input by medical professionals. Whether or not Plaintiff's mental impairments are exacerbated by obesity, the record is incomplete regarding her current mental status and mental residual functional capacity.

■ In *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982)(en banc), the Court wrote: "Probably the most important issue will be the question of RFC . . ." The Court went on: "The RFC that must be found . . . is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." While an ALJ is charged with determining a residual functional capacity based on all the evidence, it is a medical question and must be supported by some medical evidence. *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir.2001). SSR 96–8p merely echoes the 8th Circuit with respect to the importance of RFC in analyzing disability claims. Additionally, a credibility finding cannot substitute for medical evidence to support a finding that a claimant has a residual functional capacity to work. *Soth v. Shalala,* 827 F.Supp. 1415, 1417 (S.D.Iowa 1993).

On remand, if the relevant information cannot be obtained from Plaintiff's treating physicians, either because she is not currently seeing physicians or because they are not equipped to provide such assessments, Plaintiff must be referred to consultative physicians who have access to all of her medical records and who are asked to opine on the questions necessary for the ALJ to make an informed decision which is supported by substantial evidence on the record as a whole. This is true for Plaintiff's physical, as well as mental, impairments.

Expert testimony will also be necessary to establish the correct onset of disability date. As noted in the ALJ's opening remarks and findings, Plaintiff applied for both Title II and Title XVI benefits in September 2009. An onset of disability date of February 9, 2006 was alleged. In order for Plaintiff to be entitled to Title II benefits, disability must be established before the end of December 2007.

■ On remand work and cooperation will be required by the ALJ and Plaintiff's counsel. *See Battles v. Shalala,* 36 F.3d 43, 44–45 (8th Cir.1994):

> [A]n administrative hearing is not an adversarial proceeding. *Henrie v. Dept. of Health & Human Serv.,* 13 F.3d 359, 361 (10th Cir.1993). "[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice." *Sears v. Bowen,* 840 F.2d 394, 402 (7th Cir.1988). Moreover, "[a]n adequate hearing is indispensable because a reviewing court may consider only the Secretary's final decision [and] the evidence in the administrative transcript on which the decision was based." *Higbee v. Sullivan,* 975 F.2d 558, 562 (9th Cir. 1992)(per curiam).

This Court knows of no reason why counsel cannot, and should not, assist the ALJ, as well as his client, by obtaining evidence to support the claimant's case.

Finally, the Court would remind the Commissioner of the admonition by the Court of Appeals for the 8th Circuit in *Landess v. Weinberger,* 490 F.2d 1187, 1190 (8th Cir.1974):

> In evaluating whether a claimant is capable of engaging in any gainful activity it is essential that the Secretary view the individual as a whole. It is senseless to view several disabilities as isolated from one another as the medical advisers did here. Each illness standing

alone, measured in the abstract, may or may not be disabling. But disability claimants are not to be evaluated as having several hypothetical and isolated illnesses. These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being.

## CONCLUSION AND DECISION

The Court has considered the evidence which supports, as well as the evidence which detracts from the decision made by the ALJ. After applying the balancing text noted in *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987), and cases cited therein, this Court holds that the final decision of the Commissioner is not supported by substantial evidence on the record as a whole. This case, therefore, is remanded to the Commissioner for further development of the record and for a new decision consistent with this opinion.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel*, 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b)[1]. *See also, Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart*, 376 F.Supp.2d 916 (S.D.Iowa, 2005).

IT IS SO ORDERED.

---

[1]. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."